No.   93-011

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

HAROLD and MARY HAGEN, d/b/a
HAGEN WESTERN FISHERIES,

         Plaintiffs and Appellants,

     v.

Dow CHEMICAL COMPANY and MADISON
COUNTY WEED MANAGEMENT DISTRICT,
a political subdivision of the
State of Montana,

         Defendants and Respondents.

**FILED**

NOV 12 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Fifth Judicial District,
               In and for the County of Madison,
               The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

         For Appellants:

               Gig A. Tollefsen, Berg, Lilly, Andriolo,
               & Tollefsen, Bozeman, Montana

         For Respondents:

               Robert M. Carlson, Corette, Pohlman, Allen,
               Black & Carlson, Butte, Montana (Dow Chemical):
               James T. Harrison, Jr, and James C. Cumming,
               Harrison, Loendorf & Poston, Helena,
               Montana (Madison County Weed District)


                              Submitted on Briefs:   March 18, 1993

                                        Decided:   November 12, 1993

Filed:

_____
                 Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Harold and Mary Hagen filed suit in the District Court for the Fifth Judicial District in Madison County, to recover damages sustained when over 8000 pounds of fish died subsequent to the Madison County Weed Management District's application of a weed poison adjacent to the ditch which supplied water to the Hagens' fish farm. The Hagens appeal from the District Court's order granting summary judgment in favor of the Weed District and Dow Chemical Company. The District Court concluded that the Hagens failed to submit sufficient evidence to establish that exposure to the weed poison caused the death of the fish.

We reverse.

The following issues are presented:

1. Did the court err when it granted summary judgment in favor of the defendants on the basis that, as a matter of law, there were no genuine issues of material fact regarding the cause of plaintiffs' damages?

2. Did the court err when it granted summary judgment in favor of Dow Chemical on the claim for punitive damages on the basis that there were no issues of material fact regarding actual fraud or malice on the part of Dow?

On July 12 and July 20, 1989, the Madison County Weed Management District sprayed a mixture of Tordon 22K, manufactured by Dow Chemical, and 2,4-D adjacent to the ditch which was the water supply of the Hagens' fish farm near Sheridan, Montana. On the afternoon of July 21, 1989, a heavy rain washed some of this

2

weed poison into the ditch and ultimately into the tanks at the **Hagens'** fish farm. Within hours of the rainstorm, more than 8000 pounds of rainbow trout had died. During the next few weeks, more of the fish turned black, lost their mucous tissue, became blind, and eventually died.

The Montana Department of Agriculture was requested to investigate this unexplained fish kill. After performing autopsies on some of the fish and analyzing soil and vegetation samples, the Department concluded that the fish had been exposed to the weed poison, and cited the Weed District for violating Montana's pesticide application law. Although the Department did not find conclusive evidence that the fish were killed due to toxicity from **2,4-D** and picloram (the active ingredient of Tordon), it did not rule out the possibility that mortality was caused by sublethal levels of the weed poison acting in combination with other stresses. The autopsies performed by the Department revealed no signs of disease in the dead fish.

Harold **Hagen** investigated to determine whether such things as improper tank maintenance, disease, or lack of oxygen had caused the fish kill. He also conducted tests in which fish were exposed to the same mixture of weed poison that had been applied by the Weed District. He observed that the test fish exhibited similar symptoms prior to death as did the trout at the fish farm, and based on his evaluation of conditions at the fish farm, concluded that the only probable cause of this incident was exposure to lethal levels of the weed poison. He also hired an independent

3

aquatic testing laboratory, Keeton Fisheries Consultants, to conduct further tests to evaluate the effect of the weed poison on trout. Based on its observations of lethal levels of picloram over different periods of exposure, Keeton Fisheries recommended that Tordon not be used where it could contaminate fish culture facilities.

On April 18, 1990, the **Hagens** filed suit in District Court to recover damages, alleging that all of their fish stock (in excess of 15,000 pounds) were either killed or rendered unsuitable for commercial use. The **Hagens** claimed that the cause of the damage to their fish was the herbicide mixture which washed into the water source for their fish farm after a heavy rainstorm on July 21, 1989.

Pursuant to § 7-22-2111, MCA, the **Hagens** alleged that the Weed District acted with gross negligence when it applied the weed poison in an area that was a **"no** spray" zone and allowed it to enter the **Hagens'** water supply. The **Hagens** sued Dow Chemical Corporation for negligence in representing that the weed poison was not dangerous to fish and could be applied in the manner that it was applied by the Weed **District.** They also sued Dow under a theory of product liability for failure to warn, and for punitive damages pursuant to § 27-1-221, MCA, based upon the allegation that it willfully disregarded the high probability of substantial injury to fish and human populations.

Both defendants moved for summary judgment, and the **Hagens** followed with a motion for summary judgment against the Weed

4

District. After a hearing on October 13, 1992, the court issued its order and memorandum in which it granted the defendants' motions for summary judgment on the ground that the evidence presented was not sufficient to allow a jury to find that the weed poison caused the damage to the fish. It also granted summary judgment in favor of Dow on the claim for punitive damages on the ground that the Hagens failed to submit proof of actual fraud or malice by Dow. From this order, the Hagens appeal.

### STANDARD OF REVIEW

Summary judgment is an extreme remedy which should not be granted when there is any genuine issue of material fact: the procedure should never be substituted for trial if a material factual controversy exists. Rule 56(c), M.R.Civ.P.; *Cereck v. Albertson's, Inc.* (1981), 195 Mont. 409, 637 P.2d 509; *Reaves v. Reinbold* (1980), 189 Mont. 284, 615 P.2d 896.

The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924. In light of the pleadings and the evidence before the court, there must be no material issue of fact remaining which would entitle the nonmoving party to recover. *Marriage of Hoyt* (1985), 215 Mont. 449, 454, 698 P.2d 418, 421. The party opposing summary judgment must present material and substantial evidence, rather than merely conclusory or speculative statements, to raise a genuine issue of

5

material fact. *B.M. by Berger v. State* (1985), 215 Mont. 175, 179, 698 P.2d 399, 401.

This Court reviews an order for summary judgment by utilizing the same criteria used by a district court initially under Rule 56, M.R.Civ.P. *Minnie% City of Roundup* (Mont. 1993), 849 P.2d 212, 214, 50 St. Rep. 342, 343. Furthermore, on review, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party opposing summary judgment. *Cereck*, 637 P.2d at 511.

I.

Did the court err when it granted summary judgment in favor of the defendants on the basis that there were no genuine issues of material fact regarding the cause of plaintiffs' damages?

It is well established that issues of negligence are generally not susceptible to summary judgment and are better determined at trial. *Brohman v. State* (1988), 230 Mont. 198, 749 P.2d 67. However, this Court has made clear that summary judgment is proper if a plaintiff fails to submit evidence which would establish an element material to his negligence action. *U.S. Fidelity & Guaranty Co. v. Camp* (1992), 253 Mont. 64, 831 P.2d 586; *Dvorak v. Matador Service, Inc.* (1986), 223 Mont. 98, 727 P.2d 1306.

In this instance, the District Court determined that the Hagens failed to establish liability for negligent conduct on the part of either the Weed District or Dow Chemical because the Hagens "failed to prove that the fish death was caused by any defect in

Dow's product or any actions or inactions of Dow or Madison County." The court concluded that there was not sufficient evidence in the record to raise an issue of fact on the question of causation, and therefore, ruled that plaintiffs could not maintain an action for strict liability or negligence.

Dow Chemical and the Weed District assert that the court was correct in reaching this conclusion because the Hagens offered no admissible expert opinion testimony that the weed poison definitively caused or contributed to the death of the fish. Dow contends that expert testimony regarding causation is crucial and since the Hagens' experts could only speculate on the issue of causation, summary judgment was proper. Dow contends that the Hagens failed to meet their burden of proof regarding causation because their case was based only on circumstantial evidence. In contrast, Dow offered the direct testimony of an expert who claimed that the cause of death was not its product Tordon, but rather was due to reduced oxygen availability caused by the obstruction of water flow in the tanks at the fish farm.

The Weed District also contends that the Hagens failed to establish a cause of action under § 7-22-2111, MCA, because there is no evidence in the record of a willful act on the part of the Weed District which could constitute gross negligence. The Weed District asserts that there is no proof that it sprayed in the area of the ditch, in 1989 or previously, knowing it to be a "no spray" zone. Nor is there any factual evidence that the Weed District was ever put on notice of the Hagens' concern about spraying in the

7

vicinity of the fish farm, or of other incidents of fish kills that the Hagens now claim occurred subsequent to the application of herbicides in previous years.

It is clear from the District Court's summary judgment order and memorandum that it based its decision solely on a determination that there was no factual evidence upon which the jury could determine that the weed poison caused the fish to die. Therefore, the first issue before this Court is whether there is a complete absence of any genuine factual dispute on the question of causation. Even if the defendants have offered significant evidence to contradict the evidence offered by the Hagens, or in the case of the Weed District, offered evidence to dispute the claim of gross negligence, at this juncture our inquiry is simply whether the Hagens have produced sufficient evidence from which it can be reasonably inferred that the weed poison, applied by the Weed District and containing Dow's product, caused the Hagens' injuries.

After reviewing the record and considering the standard of review outlined above, we conclude that the Hagens did raise genuine issues of material fact regarding the cause of their damages and that this case does not fall into the category that allows the court to determine the absence of liability as a matter of law. Therefore, we hold that summary judgment was not appropriate in this instance.

This Court has adopted a flexible standard of proof on causation which may be met by circumstantial, as well as direct,

8

evidence. *Brothers v. General Motors Corp.* (1983), 202 Mont. 477, 658 P.2d 1108; *Brown v. North American Mfg. Co.* (1978), 176 Mont. 98, 576 P.2d 711. Although a plaintiff does not meet his burden of proof by merely establishing that an incident occurred, it is well established that in actions dealing with product liability, sufficient evidence to make a prima facie case may consist of establishing the circumstances of the incident, similar occurrences under similar circumstances, and elimination of alternative causes. *Brothers,* 658 P.2d at 1110. Also, courts in other jurisdictions have long accepted circumstantial evidence as an acknowledged basis for establishing causation in chemical poisoning cases because of the inherent difficulty in offering direct proof in these situations. *See, e.g., Harrison v. Whitt* (Wash. App. 1985), 698 P.2d 87; *Wing v. Clark's Air Service,* Inc. (Idaho 1984), 683 P.2d 842; *Thomas Helicopters, Inc. v. San Tan Ranches* (Idaho 1981), 633 P.2d 1145; *Branco Eastern Co. v. Leffler* (Colo. 1971), 482 P.2d 364; *Chickasha Cotton Oil Co. v. Hancock* (Okla. 1957), 306 P.2d 330.

The record in this case discloses that the Hagens offered evidence that the Weed District applied a mixture of Tordon and 2,4-D to roadside weeds in the vicinity of the Hagens' fish farm on two dates in July, one of which was the day before the fish died. There was also evidence that the fish had been exposed to the weed poison at the time of death. The investigation and testing by the Department of Agriculture demonstrated movement of the herbicide mixture from its point of application to the ditch, and ultimately

9

into the fish tanks, immediately after the rainstorm on July 21, 1989. And the evidence was undisputed that within hours of the rainstorm which washed the herbicide into the fish tanks, over 8000 pounds of trout were dead or dying.

Autopsies performed on the fish by the Department revealed the presence of 2,4-D in the dead fish. However, Dow contends that since no picloram, the active ingredient in its product, was detected in the dead fish, there is no material factual issue in relation to the cause of action brought against Dow. Dow argues that without proof that the fish were exposed to picloram, the Hagens cannot establish liability on the part of Dow. There is evidence in the record, however, that picloram does not bioaccumulate in organic matter in the same fashion as 2,4-D. Therefore, the Hagens contend it can be inferred that since the fish were exposed to certain levels of 2,4-D, they were likewise exposed to the picloram that was in the herbicide mixture. Viewing this evidence in the light most favorable to the Hagens, as the party opposing summary judgment, it can be reasonably deduced that the fish were exposed to Dow's product.

Furthermore, there is evidence in the record that test fish died when exposed to a similar herbicide mixture containing picloram, and that these fish exhibited the same symptoms prior to death as did the fish at the Hagens' fish farm. Evidence was also presented that sublethal concentrations of these herbicides could be toxic due to the synergistic effects of mixing these ingredients, or the effect of these toxins in combination with

10

natural stresses that the fish populations were subjected to. Although the parties' various experts dispute the validity or applicability of some of this evidence, the credibility and weight to be given to such evidence is a matter to be resolved by the trier of fact, and is not a question of law. *State v. Medina* (1990), 245 Mont. 25, 34, 798 P.2d 1032, 1038.

The record also reveals factual disputes about possible causes of death other than exposure to toxic levels of the herbicide mixture. The Hagens contend that other causes were eliminated, while Dow's experts assert that the cause of death was oxygen deprivation resulting from reduced water flow in the tanks. However, there was direct testimony from the caretaker who first discovered the dead fish that there was no shortage of water in the tanks at the time the fish died, and therefore, no lethal shortage of oxygen. Because of such contradictory evidence, the exact cause of death under the circumstances of this case constitutes a material question of fact.

Considering this evidence in its entirety, despite the fact that there is evidence to the contrary, one could reasonably find that the fish died from exposure to the herbicide containing Dow's product based on the following circumstances: the fish died shortly after the weed poison was washed into the water tanks: traces of weed poison were found in the fish: fish have died from exposure to this weed poison under **similar** circumstances; and no alternative cause of death has been proven. Under the tests outlined in

*Brothers,* 658 P.2d at 1110, and *Brown,* 576 P.2d at 716, we conclude that the circumstantial evidence presented here is sufficient to raise a material question of fact regarding causation.

Dow urges this Court to reject certain expert testimony offered by the Hagens in which it is asserted that the fish were exposed to lethal levels of the herbicide mixture and that this was the cause in fact of the incident, on the basis that this evidence constitutes inadmissible hearsay under the Montana Rules of Evidence, or that the parties are not qualified to offer expert opinions. Without ruling on the admissibility of the documents in question, the transcript shows that the Hagens intended to offer this evidence as direct testimony during the trial, and this evidence was discussed during the summary judgment hearing. However, even if we accept Dow's contention that this evidence should not have been considered by the District Court during the summary judgment hearing, and therefore, that this Court should disregard the substance of this disputed evidence, we have already held that there is sufficient circumstantial evidence in the record, as discussed above, to raise a material issue of fact regarding the cause of the fish kill.

DOW insists that, under this Court's recent decisions in *Nelson v. Montana Power Company* (1993), 256 Mont. 409, 847 P.2d 284, and *Camp,* 831 P.2d 586, summary judgment was proper because, based on the record, the Hagens could not prove by a preponderance of the evidence that their injury was caused by the defendants' actions.

12

Those cases are distinguishable from the situation here, however, because in both Nelson and *Camp* the evidence consisted wholly of unsupported conclusory or speculative statements. In this instance, the plaintiffs' claim is corroborated by sufficient factually based circumstantial evidence such that, when considered as a whole, a genuine issue of material fact exists. Although the District Court concluded that the Hagens would not be able to prove by a preponderance of the evidence that the fish died from exposure to the weed poison, we conclude that, based on the evidence in the record, reasonable minds could differ in this regard. As long as there is a material issue of fact in dispute, as exists under the circumstances presented here, summary judgment is not appropriate.

II.

Did the court err when it granted summary judgment in favor of Dow Chemical on the claim for punitive damages on the basis that there were no issues of material fact regarding actual fraud or malice on the part of Dow?

The Hagens sought to recover punitive damages on the basis that Dow was aware of its product's danger to fish cultures and acted with a willful disregard of the rights of others by representing that it could safely be applied in the manner that it was applied by the Weed District. The District Court dismissed this claim on the basis that the Hagens submitted no evidence of actual fraud or actual malice on the part of Dow.

The Hagens contend that there was sufficient evidence to allow a jury to find in their favor. They argue that Dow was aware of

13

research indicating that picloram was unsafe at levels of .035 parts per million (ppm), and that Dow itself had a study that indicated picloram was lethal at 1 ppm. The **Hagens** contend that Dow acted with malice when it represented that the lethal concentration was much higher than this, and when its agent advised the Weed District that it could safely use the herbicide around fish despite its knowledge to the contrary.

As already noted in the discussion on causation, the record in this case is replete with contradictory evidence regarding the toxicity of the herbicides which were sprayed in the vicinity of the fish farm. There is evidence that one of Dow's employees had conducted tests to determine the effects of Tordon on fish, and found that picloram was lethal at a concentration of 1 ppm. Other tests conducted by Dow, however, indicate that picloram is not lethal until it reaches concentrations of 15 ppm. The record also contains evidence of testing by Dr. Dan Woodward, which was forwarded to Dow, demonstrating that picloram was unsafe even at a level of .035 ppm.

The Code of Federal Regulations requires a warning label stating **"This** Pesticide is Toxic to **Fish"** if the pesticide contains an active ingredient which is toxic to fish at a concentration of 1 ppm or less. 40 C.F.R. § 156.10(h)(2)(ii)(B) (1992). The Tordon label does not have such a warning, and Dow contends that the existing label adequately advises against use of the product where it might contaminate water used for irrigation or domestic purposes. However, the evidence shows that even though Dow had

14

knowledge of the **Woodward** study and its own testing which demonstrated toxicity at this level, the only reports submitted to the Environmental Protection Agency regarding the need for a warning on Dow's label were the company's tests indicating toxicity at 15 ppm.

The record also contains evidence that the **Woodward** study established that there is a synergistic affect when picloram and 2,4-D are combined which results in a lower level of toxicity than either of the chemicals alone. Nevertheless, the record demonstrates that Dow represented to its users that the chemicals could be mixed and safely applied, and if used according to the label, it was not toxic to fish. However, as already noted, the label does not warn about the potential dangers when used in close proximity to fish populations.

Montana law provides that reasonable punitive damages may be awarded when a defendant has been found guilty of actual fraud or actual malice. Section 27-1-221, MCA. Actual **malice** occurs when a defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and then proceeds to act with indifference or disregard of the high probability of injury. Section **27-1-221(2),** MCA.

The **Hagens** were not required to prove during the summary judgment proceedings that Dow's actions constituted actual malice, but rather that a genuine dispute exists with regard to this allegation. After reviewing the record, we conclude that there was evidence that Dow was aware that its product had characteristics

15

which created a high probability of damages to people like the Hagens. A factual dispute exists regarding whether Dow represented to EPA that a warning label was not required when it knew otherwise, and whether Dow represented that it was safe to mix the herbicides and apply the mixture in the vicinity of fish cultures, when it knew otherwise. Therefore, we conclude that a genuine factual dispute exists on the issue of punitive damages and summary judgment should not have been granted.

Accordingly, the judgment of the District Court is reversed and this matter is remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

16

November 12, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gig A. Tollefsen
Berg, Lilly, Andriolo & Tollefsen
910 Technology Blvd., Ste. A
Bozeman, MT 59715

Robert M. Carlson
Corette, Pohlman, Allen, Black & Carlson
P.O. Box 509
Butte, MT 59703

James T. Harrison, Jr. and James C. Cumming
Harrison, Loendorf & Poston
2225 Eleventh Ave., Ste. 21
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
  Deputy