No. 94-528

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DEAN HOWARD,

      Plaintiff and Appellant,

  v.

CONLIN FURNITURE NO. 2, INC.,
a Montana corporation,

FILED

AUG 2 1 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Michael G. Eiselein, Lynaugh, Fitzgerald,
Eiselein & Eakin, Billings, Montana

     For Respondent:

          T. Thomas Singer, Moulton, Bellingham
& Mather, Billings, Montana

Submitted on Briefs:  March 30, 1995

Decided:  August 21, 1995

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, Dean Howard, filed a complaint and an amended complaint in the District Court for the Thirteenth Judicial District in Yellowstone County in which he alleged that he had been wrongfully discharged from his employment by the defendant, Conlin Furniture No. 2, Inc. (Conlin). In response to Conlin's motion for summary judgment, the District Court concluded that Howard failed to raise genuine issues of material fact, and that Conlin was entitled to judgment dismissing Howard's complaint as a matter of law. Howard appeals from the District Court's order and judgment. We reverse the judgment of the District Court.

The issue on appeal is whether the District Court erred when it granted Conlin's motion for summary judgment.

### FACTUAL BACKGROUND

Paul Gunville is the president of 16 Conlin furniture stores, including stores in Montana, each of which is individually incorporated. In 1990, Gunville recruited Dean Howard from Baers Furniture to work for Conlin's store in Billings. Howard began to work as Conlin's manager on September 4, 1990, and was paid a salary in the amount of $50,000 annually, plus a commission. On May 4, 1992, Gunville evaluated Howard's performance as manager to that date by concluding that: "Dean has brought strength in leadership and great management tools with an underlying desire to be and teach success. Dean will only get better as his experience in mdse. and general furniture business increases." He concluded

by stating that Howard's potential for advancement in the company is "outstanding."

In late 1992, Gunville hired Robert Anderson from Rhodes Furniture Store in Atlanta, Georgia, to work as a district supervisor for four of his stores in Montana. Anderson began work in Billings in January 1993.

Anderson took over Gunville's role as Howard's supervisor.

Before Anderson left Atlanta, Doug Sahr, who also worked for Rhodes, asked Anderson to keep Sahr in mind for positions that might become available.

After Anderson began work for Conlin, he telephoned Sahr to determine whether he was interested in a position as a manager. Anderson testified that he may have telephoned Sahr in March 1993. Howard produced telephone records that indicated several telephone calls were made from the Conlin No. 2 store in Billings to Sahr's home telephone number, as well as to Rhodes Furniture Stores in Atlanta, in February and March 1993. During that same month, Anderson began to record written complaints regarding Howard's performance.

On May 20, 1993, Howard was terminated from his position as a store manager and then offered a sales position at a salary of $1000 per month, plus a commission opportunity. He was not first advised of the areas in which he was deficient and given an opportunity to improve his performance. Sahr replaced Howard shortly after Howard was terminated as manager.

on June 28, 1994, Conlin moved the District Court to dismiss Howard's complaint by summary judgment for the reasons that he was neither actually nor constructively discharged and that there were legitimate business reasons for his demotion. The District Court agreed. It held that Howard's rejection of the sales job was, at best, a constructive discharge, but that Howard failed to offer evidence that working conditions would have been intolerable. It also held that Conlin offered evidence of reasonable job related grounds for demotion, and that Howard's alleged reasons were conclusory and speculative.

### DISCUSSION

Did the District Court err when it dismissed Howard's complaint by summary judgment?

This Court reviews an order granting summary judgment based on the same criteria applied by the district court pursuant to Rule 56, M.R.Civ.P. *Hagen v. Dow Chemical Co.* (1993), 261 Mont. 487, 491, 863 P.2d 413, 416 (citing *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). Summary judgment is an extreme remedy and should not be granted if there is any genuine issue of material fact; a summary judgment procedure should never be substituted for a trial if a material factual controversy exists. *Hagen*, 863 P.2d at 416 (citing Rule 56(c), M.R.Civ.P.; *Cereck v. Albertson's,* Inc. (1981), 195 Mont. 409, 637 P.2d 509; *Reaves v. Reinbold* (1980), 189 Mont. 284, 615 P.2d 896).

4

A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issues. *Hagen*, 863 P.2d at 416 (citing *D'Agostino v. Swanson* (1990), 240 Mont. 435, 442, 784 P.2d 919, 924). In light of the pleadings and the evidence before the court, there must be no material issue of fact remaining which would entitle a nonmoving party to recover. *Hagen*, 863 P.2d at 416 (citing *Marriage of Hoyt* (1985), 215 Mont. 449, 454, 698 P.2d 418, 421). Once the movant has presented evidence to support his or her motion, the party opposing summary judgment must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Hagen*, 863 P.2d at 416 (citing *B.M. by Berger v. State* (1985), 215 Mont. 175, 179, 698 P.2d 399, 401). Finally, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party who opposed summary judgment. *Hagen*, 863 P.2d at 416 (citing *Cereck, 637* P.2d at 511).

In its order, the District Court recognized that Howard alleged that he was discharged, or constructively discharged, from his employment. However, in its discussion, the court stated that the issue was whether Conlin created an intolerable employment situation within the meaning of § 39-2-903 (1), MCA, when Conlin demoted Howard. The District Court concluded that Howard did not raise genuine issues of fact which would preclude summary judgment because Howard's support for the notion that his demotion was a

5

pretext to hire Sahr consisted only of conclusory and speculative statements. Because Conlin supported its reasons for demoting Howard with several job-related incidents, the court concluded that the demotion could be based on reasonable job-related grounds and a logical relationship to the needs of the business. The court also stated that it considered Howard's claim for actual discharge to be marginal, at best, and focused its analysis on Howard's claim for constructive discharge.

Howard argues that the District Court erred because it focused on constructive discharge. Howard claims that Anderson admitted he was discharged from his position as store manager, which is not the equivalent of a voluntary termination because of an intolerable working condition.

Conlin contends that Howard was demoted, not discharged Conlin also claims that we should affirm the District Court's decision because this Court has upheld a discharge motivated by **legitimate** business reasons when the plaintiff presents only conclusory allegations. *Finstad v. Montana Power Co.* (1990), 241 Mont 10, 29, **785** P.2d 1372, 1383.

Section 39-2-904(2), MCA, **states** that a discharge is wrongful only if: "the discharge was not for good cause and the employee had completed the employer's probationary period of employment . . ." The term "discharge" includes

> constructive discharge . . . and any other termination of
> employment, including resignation, elimination of the
> job, layoff for lack of work, failure to recall or

**6**

rehire, and any other cutback in the number of employees for a legitimate business reason.

Section 39-2-903(2), MCA. "Good cause" is defined as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA.

The first sub-issue we must decide is whether Howard was discharged, or merely demoted, following which he resigned. In that regard, the statement made by Anderson to the Billings Job Service in response to Howard's application for benefits, speaks for itself. He stated:

(1) Dean Howard was discharged from the position of store manager on the date noted.

(2) At that time he was offered a sales position at Conlin's. That offer was declined by Mr. Howard on 5/25/93.

This case does not involve a lateral transfer, nor a minor change in job description. This case involves absolute and final termination from a managerial position, followed by an offer of employment in a functionally different, and substantially inferior, position with the same employer. To hold, as Conlin suggests, that termination of employment in a position that pays over $50,000 per year, and subsequently offering a position which pays less than 25 percent of that amount, is not "a termination of employment" would ignore the plain language of the Act and allow circumvention of the Act's damage provisions which are based on wages at the time of termination. Section 39-2-905, MCA.

7

Howard was informed that he was being terminated as Conlin's manager. He was then offered a subordinate position among the sales staff he previously managed. His refusal to accept an offer of a lesser position, at best, affects his duty to mitigate his damages. We conclude that when Howard was terminated from his managerial position, he was discharged from employment within the meaning of § 39-2-903(2), MCA, of Montana's Wrongful Discharge From Employment Act.

The second sub-issue is whether Howard's termination was for good cause as a matter of law, or whether there was a factual issue to be decided.

The only formal evaluation of Howard's work as manager of the Conlin's Furniture Store was the evaluation done by the company's president on May 4, 1992. In that evaluation, Howard was given the highest possible rating for interest in his work, self-confidence, personal characteristics, personal relations, leadership, and customer service. With regard to customer service, his employer wrote "Dean writes the book here!". He was given above average ratings in practically every other area considered. As recently as March 4, 1993, two and one-half months before his termination, his direct supervisor, Anderson, testified that no thought had been given to his termination.

However, Anderson testified that from January 1993 until Howard's termination as manager, the following events occurred

8

which demonstrated Howard's unsatisfactory performance of his job duties:

1. The warehouse he was responsible for was found to be in poor condition and disorderly;

2. He credited his account at the store with the value of a rug he had brought to the store from his own home;

3. He was absent an excessive amount of time;

4. He made a personnel decision regarding Connie Smith which caused dissatisfaction from other employees and ultimate payment to Smith of two weeks severance pay;

5. He gave inaccurate information to a customer who then, based on that information, traveled a long distance to the store without being able to accomplish the purpose of her trip;

6. He loaned out a company vehicle which was damaged while being used by a third party;

7. A letter from a disgruntled employee complained of management performance; and

8. A claim for unpaid commissions was made by a salesperson after her termination from employment at Conlin.

In response to those allegations, Howard testified by deposition that:

1. He had trouble controlling the warehouse because its employees were underpaid and dissatisfied;

2. His Karastan rug was placed on the floor of the store by consignment openly and apparently consistent with past practices;

9

3. His absences from the store were related to store business;

4. His personnel decision which led to discontent among other employees was a good faith effort to retain an employee who threatened to go to work for a competitor;

5. The misinformation he gave to a long-distance customer was based on information obtained from an inventory sheet which was supposed to be current;

6. When he loaned the company vehicle for use by a third party, he acted consistent with the company's policy of assisting others for the purpose of public relations;

7. The critical letter from a former employee related to management in general and not him in particular; and

8. The commission payments which were the subject of a claim by a former employee were withheld with the approval of Anderson.

We conclude that these claims, denials, and counterclaims raise a factual issue as to whether Howard was terminated for good cause within the meaning of § 39-2-903(5), MCA, of the Wrongful Discharge From Employment Act.

We held in *Guertin v. Moody's Market* (1994), 265 Mont. 61, 874 P.2d 710, that where an employee testified that she had been hard working and loyal and had not received previous complaints from her employer about her management capability; and where she denied that the reasons given by her employer for her termination were correct; there was an issue of fact regarding whether she was terminated for

10

good cause. Likewise, here we conclude that reasonable persons could differ regarding inferences to be drawn from the deposition testimony and exhibits.

Therefore, the judgment of the District Court which dismissed plaintiff's amended complaint is reversed and this case is remanded for further proceedings consistent with this opinion.

_____
                Justice

We concur:


_____
      Chief Justice



_____



_____



_____
                Justices


11

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion. The Court resolves the issue before it on the basis of its conclusion that a demotion can be a "discharge," as opposed to a "constructive discharge," under § 39-2-903(2), MCA. I cannot agree.

Section 39-2-903(2), MCA, provides in pertinent part:

"Discharge" includes . . . any other termination of employment, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason.

The plain meaning of the term "termination," as the word is used in the statute, is "ending;" thus, a "termination of employment" is an ending of employment. The other terms used in § 39-2-903(2), MCA, also connote an ending of employment. In each situation referenced--resignation, elimination of the job, layoff, and the like--the person's employment has ended. Therefore, I conclude that the statute means what it so clearly says: that a discharge means an ending of employment, nothing more and nothing less.

The Court equates a demotion, or a termination from a particular position with an offer of a different position, to a "termination of employment." The plain language of the statute does not support such a conclusion. Nor does the Court offer any authority or legal analysis which might support its conclusion. The reason is clear--analysis would be the undoing of the result the Court desires to reach in this regard.

Howard contends that two cases from the Michigan Court of Appeals support his position that the term "termination of

12

employment" includes the term "demotion." The Court wisely does not rely on these cases, as neither supports its conclusion.

In the wrongful discharge case of Richards v. Detroit Free Press (Mich. App. 1988), 433 N.W.2d 320, the Michigan appellate court states flatly: "A demotion from one job to a lesser job is a discharge **from** the **first** job, and a demotion will support a wrongful discharge **claim**" Richards, 433 N.W.2d at 322. There are several insurmountable problems with attempting to use Richards as authority in the case presently before us. First, the Michigan court does not quote any controlling wrongful discharge statute such as the one at issue here; thus, no basis is provided on which we properly could reach the **same** conclusion. Second, the case to which the Michigan court cites in support of its statement, Sepanske v. Bendix Corporation (Mich. App. 1985), 384 N.W.2d 54, was inapposite to the Richards case. Sepanske was a breach of employment contract case, not a wrongful discharge case. Sepanske, **384** N.W.2d at 58-59. Moreover, the statement drawn from Senanske in Richards simply does not appear, either directly or indirectly, in Sepanske. Finally, and **most** importantly, the Michigan Supreme Court remanded Richards to the Michigan Court of Appeals for reconsideration. Richards v. Detroit Free Press (Mich. 1989), 448 N.W.2d 351. Thus, the Richards decision is of no force and effect.

The Court suggests that Anderson's statement to the Billings Job Service "speaks for itself" with regard to the issue of whether Howard was discharged, or merely was demoted and then resigned. Anderson's statements that Howard was discharged from the position

13

of store manager and offered a sales position on the same date do, indeed, speak for themselves; they do not, however, speak to the legal issue of whether a demotion is a "termination of employment" under § 39-2-903(2), MCA.

I would affirm the District Court's determination that a demotion is not a termination of employment and address the issue of constructive discharge on which, in large part, the District Court's summary judgment ruling was based. The Court having avoided that issue altogether by its unsupported conclusion, there is no point in my addressing it.

_____
Justice

Chief Justice J.A. Turnage joins in the foregoing dissent of Justice Karla M. Gray.

_____
Chief Justice

14

Justice Fred J. Weber dissents as follows:

I dissent from the Court's opinion. In doing so, I join in the dissent of Justice Gray.

In addition to the points made by Justice Gray, I point out that the Wrongful Discharge From Employment Act, §§ 39-2-901 to 915, MCA, has additional pertinent provisions. Section 39-2-904, MCA, sets forth the key elements of wrongful discharge as follows:

> 39-Z-904. Elements of wrongful discharge. A discharge is wrongful only if:
> . .
> (2) the discharge was not for good cause . .

As a result of the foregoing statute, we must first determine if a discharge was not for good cause. Good cause is defined as follows in § 39-2-903, MCA:

> (5) "Good cause" means reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason.

I emphasize here that good cause relates only to _dismissal_ based on a failure to perform job duties, etc. Justice Gray points out that "termination" is an ending of employment. In the same way, the word "dismissal" is an ending of employment. I conclude this is an additional reason to join in the conclusion of Justice Gray that a discharge means an ending of employment, nothing more and nothing less. I would affirm the District Court's determination.

_____
                Justice

15

August 21, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael G. Eiselein
Lynaugh, Fitzgerald, Eiselein & Eakin
P.O. Box 1729
Billings, MT 59103-1729

T. Thomas Singer, Esq.
Martha Sheehy, Esq.
Moulton, Bellingham, Longo & Mather
P.O. Box 2559
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _N. Gallagher_
Deputy