JUSTICE LEAPHART
delivered the Opinion of the Court.
Nafisseh Heiat appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, granting Eastern Montana College and the Montana Commissioner of Higher Education (EMC) summary judgment, concluding that EMC was not liable for sexual discrimination in employment. We reverse.
The following issue is raised on appeal:
Did the District Court err in granting EMC’s motion for summary judgment?
Plaintiff, Dr. Nafisseh Heiat Ph.D. (Nafisseh), and her husband Dr. Abbas Heiat Ph.D. (Abbas) are employed as associate professors in the Department of Accounting and Information Systems at EMC. Both Nafisseh and Abbas possess Ph.D. degrees from Portland State University. The District Court determined that they, as faculty members at EMC, perform substantially the same work. Abbas was hired by EMC in 1987 as an assistant professor in the information systems program. At the time Abbas was hired, EMC had recently lost its only faculty member in the information systems program who held a Ph.D. EMC advertised for the position listing a Ph.D. as a qualification. EMC offered Abbas the position.
Based on Abbas’ “terminal” doctoral degree and experience, his starting salary under the collective bargaining agreement then in effect would have been $20,491. However, the collective bargaining agreement authorized the EMC administration to offer higher salaries to prospective faculty members in extraordinary recruitment situations. Fearing that Abbas would not accept the position for $20,491, EMC offered him in excess of $30,000. Ultimately, after additional negotiation, Abbas accepted the position at a starting salary of $40,000.
In 1988, EMC advertised for another faculty opening in the information systems program. The posting listed a Ph.D. or equivalent as a qualification. Nafisseh received her Ph.D. in 1987, and applied for this position with EMC. She was offered the position with a staring salary of $27,190. Although she requested an additional adjustment to the starting salary, her request was denied and she accepted the position for the offered salary. Both Nafisseh and Abbas have received periodic salary increases, as mandated by the collective bargaining agreement and, during the 1992-93 academic year, Nafisseh earned *327 $39,049 while Abbas earned $54,575. This disparity is due entirely to the difference in their starting salaries.
In April of 1991, Nafisseh filed a complaint with the Montana Human Rights Commission alleging that she had been discriminated against based on her sex and that she had not been given equal pay for equal work. The Montana Human Rights Commission issued a right to sue letter. In her District Court complaint, Nafisseh alleged violations of the Montana Human Rights Act, the Government Code of Fair Practices, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, and the Equal Pay Act. On June 24,1994, the District Court granted EMC’s motion for summary judgment. Nafisseh appeals from this order.
Our standard in reviewing a district court’s grant of a motion for summary judgment is de novo. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. That is, we review an order of summary judgment using the same criteria as the district court; we are guided by Rule 56, M.R.Civ.P. Chilberg v. Rose (1995), 273 Mont. 414, 903 P.2d 1377, 1378 (citing Minnie, 849 P.2d at 214). Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Minnie, 849 P.2d at 214. Summary judgment is an extreme remedy and should never be substituted for a trial if a material fact controversy exists. Howard v. Conlin Furniture No. 2, Inc. (1995), 272 Mont. 433, 436, 901 P.2d 116, 118-19 (citing Hagen v. Dow Chem. Co. (1993), 261 Mont. 487, 491, 863 P.2d 413, 416).
A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issues. Howard, 901 P.2d at 118. In light of the pleadings and the evidence before the district court, there must be no material issue of fact remaining which would entitle a non-moving party to recover. Howard, 901 P.2d at 118. Once the moving party has met its burden, the party opposing the summary judgment motion must present material and substantial evidence, rather than conclusory or speculative statements, to raise a genuine issue of material fact. Howard, 901 P.2d at 119. In addition, all reasonable inferences that might be drawn from the offered evidence should be drawn in favor of the party who opposed summary judgment. Howard, 901 P.2d at 119 (citing Cereck v. Albertson’s, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511).
EMC contends that it was willing to pay Abbas a higher salary than that contemplated in the collective bargaining agreement because EMC had a pressing need to have a faculty member with a *328 Ph.D. in the information systems program. EMC asserts that “[o]nce the discipline was ‘anchored’ with a Ph.D. the need for a subsequent Ph.D. was lessened and, given the tight budget the College has labored with for several years, the College felt no need to pay a premium for a second Ph.D. in the same discipline.”
Abbas and Nafisseh assert that the rationale of “anchoring” the department was not mentioned to either of them as a factor in setting salaries when they applied for and accepted positions on the faculty at EMC. Further, in an affidavit, Abbas stated that even after he was hired by EMC, he was not told that he occupied an “anchor position” nor was he assigned extra duties or responsibilities. Nafisseh stated that at the time she was hired she was told that she could not be paid a high salary because of the tight budget at EMC.
Dr. Ronald Sexton, vice-president for academic affairs at EMC, asserted that the term “anchor position” was essentially administrative jargon and, as a result, it is quite possible that neither Abbas nor Nafisseh had heard the term. Further, Sexton contended that because EMC already had Abbas as a Ph.D. on its information systems program faculty, EMC was not willing to pay a premium to hire another Ph.D. and that is the reason that Nafisseh was offered a lower starting salary.
According to the United States Supreme Court’s burden shifting analysis employed in discrimination cases, once the plaintiff has, by a preponderance of the evidence, proved a prima facie case of discrimination, the burden shifts to the defendant “to articulate some legitimate, nondiscriminatory reason for the employee’s rejection.” Texas Dep’t of Community Affairs v. Burdine (1981), 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 214-15 (citing McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668). Should the defendant carry this burden, “the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.” Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Recently, the Supreme Court refined this stage, stating that “a reason cannot be proved to be a ‘pretext for discrimination’ unless it is shown both that the reason was false, and that discrimination was the real reason.” St. Mary’s Honor Ctr. v. Hicks (1993), 509 U.S. 502, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407, 422.
At all times, the plaintiff retains the burden of persuasion and, after the defendant has articulated a legitimate, nondiscrimina *329 tory reason, the plaintiff must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. At this point, the burden merges with the ultimate burden of persuading the court that the plaintiff has been a victim of intentional discrimination. St. Mary’s Honor Ctr., 509 U.S. at _, 113 S.Ct. at 2752; Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff succeeds either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256, 101 S.Ct. at 1095.
On a motion for summary judgment in discrimination cases, the McDonnell Douglas order of proof and shifting of burdens at trial must be viewed in light of the traditional test for granting a motion for summary judgment. Brown v. Parker-Hannifin Corp. (10th Cir. 1984), 746 F.2d 1407, 1411. That test is whether the moving party has demonstrated that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.R; Howard, 901 P.2d at 118-19. As the Seventh Circuit stated, “[a]s a general rule, questions of motive and intent are inappropriate for summary judgment.” Box v. A & P Tea Co. (7th Cir. 1985), 772 F.2d 1372, 1378, cert. denied, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) (citing Cedillo v. International Ass’n of Bridge & Structural Iron Workers (7th Cir. 1979), 603 F.2d 7, 11). The Box court stated:
Consequently, a defendant in a discrimination case is not entitled to summary judgment if the plaintiff submits evidence from which a court can reasonably infer that the articulated legitimate reason is, in fact, a pretext for discrimination.
Box, 772 F.2d at 1378 (citing Gifford v. Atchison, Topeka and Santa Fe Ry. (9th Cir. 1982), 685 F.2d 1149, 1156).
The District Court determined that although Nafisseh had established a prima facie case of sex discrimination, EMC had established a legitimate nondiscriminatory reason for the salary disparity between Abbas and Nafisseh. The District Court determined that the differences in the salaries were based on factors other than sex. See County of Washington v. Gunther (1981), 452 U.S. 161, 170-71, 101 S.Ct. 2242, 2248-49, 68 L.Ed.2d 751, 760-61. However, in making this determination, the District Court adjudicated the disputed issue of material fact as to the reason for the differences in the salaries. As the Seventh Circuitfound inBox, this factual determination of motive *330 or intent is precisely the reason that summary judgment is generally inappropriate in discrimination cases. Box, 772 F.2d at 1378; see also Sorba v. Pennsylvania Drilling Co. (3d Cir. 1987), 821 F.2d 200, 205, cert. denied, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679. Where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment. Brown, 746 F.2d at 1411.
We note that Nafisseh’s burden to overcome a motion for summary judgment is different than her burden at trial. In Kenyon v. Stillwater County (1992), 254 Mont. 142, 148, 835 P.2d 742, 745-46, we stated that, in order to survive a motion for summary judgment, the plaintiff has the initial burden to “adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity....”
We went on to hold that:
If that burden is met, the employer must rebut the inference of discrimination with evidence of legitimate nondiscriminatory reasons the plaintiff was not hired or was terminated; upon such a showing, the burden shifts back to the employee to demonstrate with specific facts that the employer’s explanation is a pretext.
Kenyon, 835 P.2d at 746 (citing Foster v. Arcata Associates, Inc. (9th Cir. 1985), 772 F.2d 1453, 1459, cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986), overruled on other grounds by, Kennedy v. Allied Mut. Ins. Co. (9th Cir. 1991), 952 F.2d 262). We now determine that this process places a plaintiff, the nonmoving party in this summary judgment context, in the peculiar position of having to prove her case to survive the defendant’s motion. The order of proof and shifting of burdens at trial must be viewed in light of the traditional test for granting a motion for summary judgment. Thus, to survive a motion for summary judgment, a plaintiff must only produce evidence sufficient to support a reasonable inference of the existence of the fact at issue. Under the Kenyon test, the non-moving party is saddled with two burdens, first, to “adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity” and, if the employer rebuts the inference of discrimination with evidence of legitimate nondiscriminatory reasons, to “demonstrate with specific facts that the employer’s explanation is a pretext.” Kenyon, 835 P.2d at 746.
The three-step McDonnell Douglas analysis, as adopted in the summary judgment context by this Court in Kenyon, conflicts with *331 the two-step analysis traditionally employed in deciding motions for summary judgment. Under the traditional summary judgment analysis the party opposing summary judgment has only one burden, namely, to demonstrate that genuine issues of material fact exist. To do so, the party opposing summary judgment must present material and substantial evidence, rather than mere conclusory and speculative statements, to raise a genuine issue of material fact. Howard, 901 P.2d at 119. In Kenyon, we made the mistake of following the lead of many state and federal courts throughout the country and superimposed the three-step McDonnell Douglas trial analysis into the summary judgment context without specifically noting that the plaintiff’s burden in defending against a motion for summary judgment differs from the plaintiff’s burden at trial. At trial, the plaintiff has the burden of proof so the McDonnell Douglas construct of placing the initial burden on the plaintiff is logical. However, when, as here, the defendant makes a motion for summary judgment, that construct does not work. In summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.
We now determine that it is error to require a plaintiff in a discrimination case to satisfy the burdens set forth in Kenyon to survive a motion for summary judgment. Accordingly, we overrule that portion of Kenyon v. Stillwater County which requires a plaintiff to initially “adduce facts which, if believed, support a reasonable inference that he or she was denied an employment opportunity” and, in rebuttal, to “demonstrate with specific facts that the employer’s explanation is a pretext.” Kenyon, 835 P.2d at 746.
Instead, we now adopt an analysis consistent with the Burdine test, yet more compatible with the traditional analysis used in the summary judgment context. The plaintiff must allege a prima facie case of discrimination in her complaint. In this context, the plaintiff alleges a prima facie case by asserting that plaintiff is a member of a protected class, and that a male colleague with the same credentials, who performs substantially the same work, receives a higher salary. The employer seeking summary judgment must then come forward with a legitimate nondiscriminatory reason for the disparity. If the employer comes forward with a legitimate nondiscriminatory reason, the plaintiff must then, in addition to having alleged a prima facie case in the complaint, produce evidence that *332 establishes her prima facie case as well as evidence which raises an inference that the employer’s proffered reason is pretextual.
Of course, this does not mean that a plaintiff in a discrimination action always survives summary judgment when the plaintiff calls the employer’s proffered explanation into question. Rather than having to demonstrate with specific facts that the employer’s explanation “is a pretext,” she need only introduce evidence which raises an inference that the employer’s proffered reason is pretextual. To create a genuine issue of material fact as to pretext, the plaintiff must not only introduce evidence from which a reasonable person could infer that she is qualified, she must also introduce evidence that casts doubt on the defendant’s contention that there was a legitimate business justification for defendant’s action. Chauhan v. M. Alfieri Co. (3d Cir. 1990), 897 F.2d 123, 127 (citing Healey v. New York Life Ins. Co. (3d Cir. 1988), 860 F.2d 1209, 1220, cert. denied, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989)).
The Chauhan court determined that the plaintiff had pointed to evidence necessary to pass this test, stating that “the inconsistencies in [defendant’s] explanation, as pointed out by [plaintiff], present precisely the kind of 'inconsistencies and implausibilities in [defendant’s] proffered reasons’ that could support an inference of discrimination.” Chauhan, 897 F.2d at 128 (citations omitted).
Justice Nelson’s specially concurring opinion contends that the Kenyon test requires that a plaintiff opposing summary judgment do nothing more than establish a genuine issue of material fact. However, as this case exemplifies, in discrimination cases, the district courts are requiring that a plaintiff do more than merely raise an issue of material fact. In the present case, the District Court held that EMC established a legitimate nondiscriminatory reason for the salary disparity and that:
Dr. Nafisseh Heiat failed to establish the legitimate, nondiscriminatory reason offered by EMC for her salary is pretextual. A reasonable jury could not return a verdict in favor of Dr. Nafisseh Heiat in light of the evidence presented to the court during the summary judgment proceedings. [Emphasis added.]
Notably, the court granted summary judgment not because of Nafisseh’s inability to establish a genuine issue of material fact or to raise an inference of pretext. Rather, the court, citing the McDonnell Douglas trial burden, faulted Nafisseh for her failure to “establish” that EMC’s proffered reason “is a pretext.”
*333 The test that we now establish for a plaintiff in a discrimination case to survive a motion for summary judgment comports with Rule 56, M.R.Civ.R, in that a plaintiff is required to raise an inference of pretext, as opposed to proving pretext. This burden is more aligned with the general requirement of raising a genuine issue of material fact to survive the motion for summary judgment.
In the instant case, Nafisseh has pointed to inconsistencies in EMC’s explanation that could support an inference of discrimination. The District Court found that Nafisseh had established a prima facie case because she had “proved that she is a woman and her male colleague with the same credentials, who performs substantially the same work, receives a higher salary than her.” See St. Mary’s Honor Ctr., 509 U.S. at _, 113 S.Ct. at 2747 (discussing the elements of a prima facie case in the racial discrimination context); Sorba, 821 F.2d at 203 (discussing the elements of a prima facie case in the ADEA context). Additionally, Nafisseh submitted affidavits which, in addition to the facts making up the prima facie case, raise an inference that the defendant’s proffered reason is pretextual. Chauhan, 897 F.2d at 128. Under the standard we now announce, Nafisseh would not be required to produce affidavits establishing her prima facie case until the defendant moves for summary judgment and proffers a legitimate nondiscriminatory reason for the salary disparity.
In her affidavit, Nafisseh stated that she “was not advised that the reason Dr. Abbas Heiat was receiving a higher salary than mine was because he occupied an ‘anchor position’ in the department and that it was the practice of the college to pay a premium salary to fill such ‘anchor positions.’ ” Further, Nafisseh stated that she was told that she was receiving a lower salary because of “budgetary problems.” In his affidavit, Abbas stated that when he was hired he was not advised that one of the reasons he was offered a salary of $40,000 was because he was occupying an “anchor position.” In addition, he stated that he has not “been assigned any extra duties, chores, assignments, or responsibilities relative to said ‘anchor position.’ ”
Contrary to the dissent’s suggestion that the Heiats have done nothing more than establish an “understandable lack of knowledge as to the basis for administrative decisions made by EMC,” these affidavits raise genuine issues as to material facts in at least three particulars: (1) neither Nafisseh nor Abbas were advised of the “anchor position” rationale when they were hired or during their tenure of teaching; (2) EMC has propounded two differing reasons for Nafisseh’s lesser pay; budgetary concerns on the one hand, and the *334 “anchor position” rationale on the other; and (3) contrary to what one would expect if Abbas were in fact an “anchor” — he was never assigned any additional duties or responsibilities commensurate with such a position on the faculty. These are not mere conclusions but, rather, material facts which give rise to genuine issues, not the least of which is the question of whether the “anchor position” rationale was, as Nafisseh claims, merely an afterthought or pretext. These material facts are sufficient to overcome the motion for summary judgment. Hagen, 863 P.2d at 416 (citing D’Agostino v. Swanson (1990), 240 Mont. 435, 442, 784 P.2d 919, 924).
Nafisseh argues, and we agree, that, at best, there is a disputed issue of material fact as to whether Abbas was hired to fill a so-called “anchor position” and, at worst, an issue of whether the whole concept of an “anchor position” was merely a pretext developed after the fact to escape the consequences of EMC’s actions which led to this suit. Nafisseh testified that she was told that budgetary problems were the reason she was offered a lower salary. Resolution of this discrepancy was a question of material fact. A jury should have the opportunity to weigh the credibility of the witnesses and the testimony to determine whether Nafisseh has indeed been discriminated against because of her sex. This question of material fact, whether there was a nondiscriminatory reason for the difference in salaries, should have precluded the District Court from granting EMC’s motion for summary judgment.
Reversed and remanded for proceedings consistent with this opinion.
JUSTICES HUNT and TRIEWEILER concur.