No. 04-363

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 95

WILLIAM ROLISON,

        Plaintiff and Appellant,

   v.

BOZEMAN DEACONESS HEALTH
SERVICES, INC., a Montana corporation,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 01-401
                Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Geoffrey C. Angel; Angel Law Firm, Bozeman, Montana

        For Respondent:

                Lisa A. Levert; Poore, Roth & Robinson, Butte, Montana

                        Submitted on Briefs:  December 8, 2004

                                Decided:  April 19, 2005

Filed:

_____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      William Rolison appeals from the Orders and Judgment of the Eighteenth Judicial District Court, Gallatin County, granting partial summary judgment to the defendant, denying Rolison's motion for a new trial and awarding costs.  We affirm.

¶2      The restated issues on appeal are:

¶3      1.      Did the District Court err in granting partial summary judgment to the defendant on Rolison's federal and state retaliation claims?

¶4      2.      Did the District Court manifestly abuse its discretion in denying Rolison's motion for a new trial?

¶5      3.      In awarding costs to the prevailing defendant, did the District Court err by failing to apply the "frivolous, unreasonable, or without foundation" standard?

## BACKGROUND

¶6      Bozeman Deaconess Health Services, Inc. (Deaconess) employed Rolison as a registered nurse in its hospital's endoscopy unit beginning in June of 2000.  In March of 2001, Rolison filed a gender discrimination claim with the Montana Human Rights Bureau (HRB).  The HRB discrimination complaint is not of record, but Rolison's deposition testimony reflects his belief that Deaconess discriminated against him on the basis of gender by posing certain questions and making statements to him and other staff members around the time of his job interview; not giving him a uniform; "writing him up" for issues including failing to check in with day surgery before leaving; addressing errors in his charting; and

failing to offer him a posted full-time equivalent position. Rolison obtained a supporting witness statement from Pam Styren, another nurse in the unit.

¶7 On September 18, 2001, Rolison submitted a letter of resignation to Deaconess stating his last day of work would be October 16. He wrote his "primary concerns" were "varying and preferential treatment of employees by the supervisor," "[a] hostile work environment i.e., retaliatory accusations and discomfort from being more closely scrutinized than other employees, since filing a union grievance and consulting an attorney[,]" and inconsistency in scheduling.

¶8 On September 24, Rolison met with Hollie Raycraft, his supervisor, and Kathleen Wiese, the department manager. Deaconess' notes of the meeting--which Rolison later characterized as "probably" accurate and "probably better than [his] memory"--outline the following about the substance of the meeting. Raycraft and Wiese told Rolison that, on the basis of a collective bargaining agreement provision, they would not require him to work through October 16; they gave him a check compensating him through that date. Rolison then asked when they would discuss a sexual harassment allegation against him. Raycraft and Wiese explained that discussing the allegation was not necessary because Rolison had resigned and would no longer be working there. Rolison stated he wanted to discuss it. Raycraft and Wiese responded that, if he insisted on a discussion, documentation of the matter would become part of his file. Rolison indicated he understood, and insisted on discussing the matter.

¶9     After the discussion, Raycraft and Wiese showed Rolison an untitled document stating, in part, that he would be required to complete online sexual harassment training and to summarize its key points.  The document also stated "[t]his is the implementation of the first step of the Progressive Performance Improvement Process" and failure to comply would result in "continuation of the disciplinary process up to and including termination[.]"  Raycraft and Wiese told him the purpose of discussing the allegation--absent his resignation--would have been to advise him that his behavior had made some of his co-workers uncomfortable and to prevent future occurrences.  Rolison noted the September 18 date on the document.  Raycraft and Wiese stated they had originally intended to discuss the allegation with him on that date, but he was unable to meet with them at that time.  Then, after they received his resignation, they had decided not to discuss the allegation with him at all.  Rolison signed the document, obtained a copy and stated "[t]hank you--this is what my attorney wanted me to get."

¶10     Rolison filed a complaint with the Equal Employment Opportunity Commission (EEOC) and a retaliation claim with the HRB in September of 2001.  In October, Rolison sued Deaconess in the District Court, asserting discrimination and retaliation in violation of the Montana Human Rights Act (MHRA) and Title VII of the Civil Rights Act of 1964 (Title VII), as well as wrongful discharge under the Montana Wrongful Discharge from Employment Act (WDEA).  The District Court dismissed the WDEA claim on Deaconess' motion, with the parties apparently agreeing the existence of a collective bargaining agreement precluded that claim.  The parties jointly moved to stay the proceedings because

4

Rolison had not yet exhausted his administrative remedies, and the District Court subsequently lifted the stay after Rolison filed a right to sue letter from the EEOC. The parties do not dispute that Rolison also obtained a right to sue letter on his HRB discrimination and retaliation claims before the court entered any rulings at issue here.

¶11    Deaconess subsequently moved for summary judgment. After a hearing, the District Court granted partial summary judgment to Deaconess on Rolison's MHRA and Title VII retaliation claims, but denied the motion as to his MHRA and Title VII discrimination claims. The case proceeded to trial on the discrimination claims and the jury rendered a verdict for Deaconess.

¶12    Deaconess moved for entry of judgment and filed a memorandum of costs, which it subsequently amended to a lower amount. Rolison objected to the amended memorandum of costs, asserting some costs were not authorized by Montana law and others "should be denied given the . . . public policy to encourage claims under the Human Rights Act and Title VII[.]" He also moved for a new trial. The next day, the District Court--apparently unaware of Rolison's objection and motion--entered judgment and awarded Deaconess costs in accordance with its amended memorandum of costs. The District Court later entered an order denying Rolison's motion for a new trial and reducing the costs awarded to Deaconess. Rolison appeals. We set forth additional facts as necessary in the discussion below.

## STANDARDS OF REVIEW

¶13    We review a grant of summary judgment *de novo*, applying the same standards as the district court. Rule 56(c), M.R.Civ.P., requires summary judgment when the pleadings,

5

depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Arthur v. Pierre Ltd.*, 2004 MT 303, ¶ 14, 323 Mont. 453, ¶ 14, 100 P.3d 987, ¶ 14 (citation omitted). We review a denial of a motion for a new trial to determine whether the district court manifestly abused its discretion. *Bailey v. Beartooth Communications Co.*, 2004 MT 128, ¶ 10, 321 Mont. 305, ¶ 10, 92 P.3d 1, ¶ 10 (citation omitted). Finally, a district court's application of either §§ 25-10-101 and -102, MCA, or a different standard in determining whether a party is entitled to costs constitutes a question of law, and we review a district court's interpretation and application of the law for correctness. *See Neal v. State*, 2003 MT 53, ¶ 4, 314 Mont. 357, ¶ 4, 66 P.3d 280, ¶ 4 (citation omitted).

## DISCUSSION

¶14 *1. Did the District Court err in granting partial summary judgment to Deaconess on Rolison's federal and state retaliation claims?*

¶15 As stated above, the District Court granted Deaconess partial summary judgment on Rolison's retaliation claims under Title VII and the MHRA. Rolison asserts error in both regards. The federal "retaliation" statute provides, in part, that an employer may not discriminate against an employee because the employee has made a charge or participated in a proceeding under Title VII. 42 U.S.C. § 2000e-3(a). Montana's statute provides, in part, that it is unlawful discriminatory practice for a person to discriminate against an individual because he or she has filed a complaint or participated in a proceeding under Title 49, Chapter 2, MCA. *See* § 49-2-301, MCA.

6

¶16 On appeal, both parties advance the burden-shifting test for summary judgment motions in disparate treatment discrimination cases set forth in *Heiat v. Eastern Montana College* (1996), 275 Mont. 322, 331-32, 912 P.2d 787, 793. Under that test, Montana courts first evaluate whether a plaintiff's complaint alleges a *prima facie* case. If the plaintiff alleges a *prima facie* case, the employer must present a legitimate nondiscriminatory reason for its alleged action. Once the employer presents a legitimate nondiscriminatory reason, the plaintiff must produce evidence establishing his or her *prima facie* case, as well as evidence raising an inference that the employer's proffered reason is pretextual. *See Heiat*, 275 Mont. at 331-32, 912 P.2d at 793.

¶17 Applying *Heiat*, we first analyze whether Rolison's complaint alleges a *prima facie* retaliation case. The elements of a *prima facie* retaliation case under Title VII are: (1) the plaintiff engaged in a protected activity; (2) thereafter, the employer took an adverse employment action against the plaintiff; and (3) a causal link existed between the protected activity and the employer's action. *Beaver v. DNRC*, 2003 MT 287, ¶ 71, 318 Mont. 35, ¶ 71, 78 P.3d 857, ¶ 71 (citing *Wrighten v. Metropolitan Hosps., Inc.* (9th Cir. 1984), 726 F.2d 1346, 1354). In MHRA cases, the relevant administrative rule provides that the elements of a *prima facie* case of retaliation in the employment context vary, but generally consist of proof that the charging party was qualified for employment, engaged in a protected activity, and was subjected to adverse action, as well as a causal connection or other circumstances raising a reasonable inference that the charging party was treated differently because of the protected activity. Rule 24.9.610(2), ARM. Here, neither party sets forth the elements in

7

Rule 24.9.610, ARM, and Deaconess does not dispute that Rolison was qualified for employment. Therefore, for purposes of analyzing Rolison's MHRA claim in this case, we focus first on the "protected activity" and "adverse employment action" elements.

¶18    Rolison's complaint alleged he filed an HRB gender discrimination claim, which the parties agree is a protected activity that satisfies the first element of alleging a *prima facie* retaliation case. With regard to the "adverse employment action" element, Rolison claimed Deaconess, "through its agents and employees" filed a sexual harassment allegation against him and a co-worker and, when he heard about it, he was constructively discharged. In addition, he claimed he "suffered an adverse employment action when he was charged with sexual harassment for filing the claim of discrimination." Regarding the "causal link" element, Rolison asserted the sexual harassment allegation occurred "[a]s a result" of and "in retaliation for" his HRB claim. We conclude Rolison's complaint alleges a *prima facie* case of retaliation, as required under the first prong of the *Heiat* burden-shifting analysis.

¶19    On appeal, Rolison does not address whether Deaconess met its burden under the second prong of *Heiat*, which requires the employer to present a legitimate nondiscriminatory reason for its alleged actions. Deaconess asserts it addressed the sexual harassment allegation with Rolison because it had a legal duty to do so. We note Raycraft's affidavit and Deaconess' notes of the September 24 meeting indicate Raycraft and Wiese did not intend to discuss the allegation with Rolison because he had resigned, and they discussed the matter only after Rolison insisted.

8

¶20    The appellant bears the burden of establishing error, however, and Rule 23(a)(4), M.R.App.P., requires the appellant to support arguments with citations to relevant authorities. *RSG Holdings v. Missoula Irrigation Dist.*, 2004 MT 214, ¶ 14, 322 Mont. 369, ¶ 14, 96 P.3d 1131, ¶ 14 (citation omitted).  Rolison has not asserted in the District Court or on appeal that Deaconess failed to present a legitimate nondiscriminatory reason.  Moreover, whether Deaconess discussed the sexual harassment allegation against Rolison because it was performing a legal duty or because Rolison insisted, either scenario reflects a legitimate nondiscriminatory reason.  Thus, under these unique circumstances, we conclude Deaconess met its burden under the second prong of *Heiat*.

¶21    Under the third prong of *Heiat*, Rolison must present evidence establishing his *prima facie* case and evidence raising an inference that Deaconess' proffered reason is pretextual. *Heiat*, 275 Mont. at 331-32, 912 P.2d at 793.  On appeal, Rolison asserts he was constructively discharged "based on [Deaconess'] treatment of him over the six months since he filed with the EEOC."  He has produced no evidence establishing his constructive discharge claim, however, citing only to his complaint and to the District Court's recitation of his claims in its order granting partial summary judgment.  A nonmoving party may not defeat a summary judgment motion by relying solely on the pleadings and conclusory statements, but must provide material and substantial evidence. *See Hiebert v. Cascade County*, 2002 MT 233, ¶ 21, 311 Mont. 471, ¶ 21, 56 P.3d 848, ¶ 21 (citations omitted).  Moreover, Deaconess points out--as it did in the District Court--that Rolison "disavowed" his constructive discharge claim at his deposition.  Rolison did not dispute the disavowal in the

9

District Court, and he does not do so here. Since Rolison has disavowed the constructive discharge allegation set forth in his complaint, we need not address it further.

¶22 Regarding the events of the September 24 meeting, the parties have agreed that Rolison established the "protected activity" element of a *prima facie* case because he filed a gender discrimination claim and Deaconess was aware of it. With respect to the "adverse employment action" element, Rolison asserts on appeal that he submitted his resignation on September 24, Deaconess "refused" his resignation and he suffered a "summary dismissal." He cites to nothing of record supporting these assertions, however, and the record establishes he resigned on September 18 and Deaconess accepted his resignation on September 24. As stated above, a nonmoving party may not merely set forth conclusory statements, but must provide material and substantial evidence. *See Hiebert*, ¶ 21. Thus, we conclude Rolison has not raised a genuine issue of material fact as to whether Deaconess refused his resignation and summarily dismissed him.

¶23 Rolison maintains, however, that the discussion of the sexual harassment allegation against him, relevant documentation and decision to compensate him in lieu of requiring him to work until October 16 "could be considered" adverse employment actions. He repeatedly asserts Deaconess "disciplined" him, but the record reflects that Rolison insisted on the only actions Deaconess took to address the allegation with him--the discussion and documentation. Moreover, Rolison has provided no evidence that Deaconess' decision to pay him to the effective date of his resignation, instead of requiring him to work, was in any way

adverse to him. We conclude Rolison has not raised a genuine issue of material fact that any event during the September 24 meeting constituted an adverse employment action.

¶24 Finally, Rolison points to Deaconess' alleged treatment of Styren as a possible adverse employment action. He provides no authority, however, for the proposition that an employer's treatment of a plaintiff's co-worker may constitute an adverse employment action against the plaintiff. Nor does he advance evidence that the alleged treatment of Styren adversely affected him. As stated above, the appellant bears the burden of establishing error. *See RSG Holdings*, ¶ 14. Because Rolison has not produced evidence or advanced authorities to support his assertion regarding Styren, we decline to address it.

¶25 We conclude Rolison has not raised a genuine issue of material fact regarding the adverse employment action element of his retaliation claims. Therefore, we further conclude Rolison did not meet his burden under the third prong of the *Heiat* burden-shifting test of establishing a *prima facie* retaliation case.

¶26 As stated above, the plaintiff's burden under the third prong of *Heiat* is to produce evidence establishing a *prima facie* case and evidence raising an inference of pretext. *See Heiat*, 275 Mont. at 331-32, 912 P.2d at 793. Having concluded Rolison has not met his burden of establishing a *prima facie* retaliation case, we need not address whether he has presented evidence raising an inference that Deaconess' proffered reason was pretextual.

¶27 We hold the District Court did not err in granting partial summary judgment to Deaconess on Rolison's state and federal retaliation claims.

¶28 *2. Did the District Court manifestly abuse its discretion in denying Rolison's motion for a new trial?*

11

¶29	Relying on § 25-11-102, MCA, and his constitutional rights to due process and equal protection, Rolison moved the District Court for a new trial, arguing his trial was unfair because Deaconess had concealed certain evidence during discovery, some of which was then produced, offered and admitted at trial. The District Court addressed each of Rolison's assertions in turn and denied his motion for a new trial.

¶30	In his brief on appeal, Rolison recites three of the statutory grounds enumerated in § 25-11-102, MCA, on which a district court may grant a new trial. However, he argues only that he was denied a fair trial--pursuant to § 25-11-102(1), MCA--on his discrimination claims because Deaconess did not disclose certain exhibits before trial and the District Court made an evidentiary ruling "refusing any evidence of discrimination following the [complaint] to the Human Rights Commission." In turn, he asserts this lack of a fair trial violated his constitutional rights to due process and equal protection.

¶31	Regarding the discovery matters, Rolison does not mention the District Court's reasoning, let alone establish a manifest abuse of discretion. *See Bailey*, ¶ 10. As stated above, the appellant bears the burden of establishing error. *See RSG Holdings*, ¶ 14. We conclude Rolison has not established a manifest abuse of discretion based on the discovery-related issues.

¶32	Rolison raises the District Court's evidentiary ruling as grounds for a new trial for the first time on appeal and, therefore, we do not address it. *See Harding v. Savoy*, 2004 MT 280, ¶ 67, 323 Mont. 261, ¶ 67, 100 P.3d 976, ¶ 67 (citation omitted). In any event, Rolison refers only to a minute entry reflecting that Deaconess moved to exclude any comment on

12

the retaliation claims and the court excluded certain anticipated testimony. Rolison has not provided this Court with a trial transcript or any other sufficient record for us to review, as required by Rule 9(a), M.R.App.P. *See Gentry Montana Enterprises v. McDonald*, 2004 MT 322, ¶¶ 38-39, 324 Mont. 67, ¶¶ 38-39, 101 P.3d 767, ¶¶ 38-39. Without an adequate record, it is impossible to discern the substance of the anticipated testimony or what, if any, prejudice resulted from its exclusion. Thus, the lack of an adequate record provides an additional reason for our decision not to address his evidentiary argument.

¶33 We hold the District Court did not manifestly abuse its discretion in denying Rolison's motion for a new trial.

¶34 *3. In awarding costs to Deaconess, did the District Court err by failing to apply the "frivolous, unreasonable, or without foundation" standard?*

¶35 Generally, a party in whose favor a judgment is entered in an action for the recovery of money or damages is entitled to costs. *See* §§ 25-10-101(3) and -102, MCA. The District Court initially awarded costs in accordance with Deaconess' amended memorandum of costs. Rolison objected, asserting the costs of demonstrative exhibits, photocopying and a videotaped deposition were not allowable costs pursuant to § 25-10-201, MCA, and remaining costs "should be denied given . . . the public policy to encourage claims under the Human Rights Act and Title VII[.]"

¶36 After reviewing Rolison's objection, the District Court reduced the awarded costs, subtracting the costs of the videotaped deposition because it determined the use of the deposition at trial was frivolous. Recognizing the public policy of the MHRA and Title VII "might be" to encourage claims, the court concluded that awarding Deaconess costs was

13

mandatory pursuant to Montana statutes because the court had entered judgment for Deaconess in Rolison's action to recover money damages.

¶37    On appeal, Rolison argues the District Court erred by applying Montana statutes rather than a standard applicable to Title VII proceedings. He advances 42 U.S.C. § 2000e-5(k) as the relevant federal statute. That statute provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e-5(k). Relying primarily on *Christiansburg Garment Co. v. EEOC* (1978), 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648, 657, Rolison asserts a defendant in a Title VII case may recover costs from a plaintiff only if the action was "frivolous, unreasonable, or without foundation." Neither the federal statute nor *Christiansburg* supports Rolison's position, however, because both apply to attorney's fees and not to costs.

¶38    We hold the District Court did not err by applying §§ 25-10-101 and -102, MCA, rather than the *Christiansburg* standard, in awarding costs to Deaconess.

¶39    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON