No. 04-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 257

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

ROBERT ANTHONY CESNIK, SR.,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 2003-326(C),
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Sean D. Hinchey, Hinchey & Hinchey, Kalispell, Montana
                Steinbrenner & Binney, P.C., Missoula, Montana

        For Respondent:

                Honorable Mike McGrath, Attorney General; Jim Wheelis,
                Assistant Attorney General, Helena, Montana

                Ed Corrigan, County Attorney; Katie Schulz, Deputy County
                Attorney, Kalispell, Montana

Submitted on Briefs:  August 10, 2005

Decided:  October 19, 2005

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Subsequent to a trial by jury, the Montana Eleventh Judicial District Court, Flathead County, convicted Robert Anthony Cesnik, Sr., of felony assault with a weapon. The court sentenced Cesnik to the Montana State Prison for a term of ten years with six of those years suspended. Cesnik appeals on two grounds. First, he argues that the District Court incorrectly admitted testimony at trial referencing offensive phrases displayed on Cesnik's truck and clothing. Second, Cesnik argues that the District Court improperly based the sentence on negative inferences drawn from his silence at the sentencing hearing. We affirm and reverse.

¶2    We restate the issues as follows:

¶3    1. Whether the District Court correctly admitted evidence of phrases on Cesnik's truck and clothing.

¶4    2. Whether the District Court imposed a legal sentence when it based Cesnick's punishment, in large part, on his refusal to accept responsibility and show remorse.

**FACTUAL BACKGROUND**

¶5    The weekend of July 26, 2003, the Flathead Valley Clay Target Club, a trap shooting club, sponsored a three-day registered shoot, sanctioned by the American Trapshooters Association (ATA) and the Montana State Trapshooters Association (MSTA). During the event, Robert Cesnik, Sr., became upset over a discrepancy involving a shoot his son won on Friday. Cesnik believed the club unfairly required his son to participate in a re-shoot because of a complaint filed by Keith Brian Sipe–a complaint Cesnik contends did not

2

conform with ATA laws.  On Saturday morning, Cesnik walked into the club and engaged in a verbal altercation with Sipe.  Cesnik then exited the building and, according to witnesses, retrieved his shotgun from the shotgun rack, loaded it with what appeared to be a live round, closed the shotgun and motioned for Sipe to come outside.  Some time after the incident, Sipe notified police, resulting in the State charging Cesnik with the crime of assault with a weapon.

¶6     Throughout proceedings, Cesnik maintained his innocence, arguing that by the time he exited the building, he had begun focusing on his shoot and was not threatening Sipe. Consistent with his position regarding the events that transpired, Cesnik pled not guilty and requested a trial by jury.  Cesnik filed a motion *in limine* prior to trial requesting that the court preclude any argument or testimony regarding inflammatory writings or expletives appearing on Cesnik's truck and clothing.  Cesnik's truck contained writings that stated "Fuck Liberals," but with the "F" reversed so that it apparently read, "Puck Liberals" (as in a hockey puck).  His truck also contained the wording "pro-gun," and a phrase with a Spanish expletive–"chinga Calif. Liberals."  Cesnik had also worn clothing with similar phrases. Because some club members objected to the visibility of such language on Cesnik's truck when parked in the club's lot, the board asked him to lower his tailgate and back in when attending the club.  Cesnik complied with this request.

¶7     Cesnik filed a motion *in limine* to bar reference to these phrases at trial, arguing that the language on his truck and clothing had no relevance to the charges to be tried and that the introduction of such evidence created an unfair prejudice.  The District Court did not rule

on the motion *in limine*. During the two-day trial, Cesnik repeatedly objected to the State's attempts to solicit testimony regarding the language on his truck and clothing. Eventually, the court admitted the evidence during the testimony of Rick L. Craig, vice-president of the club. During direct examination of Craig by Cesnik's attorney, the following exchange took place:

> Cesnik's Attorney: Okay. As a board member, do you know whether Mr. Sipe has been interested in getting Mr. Cesnik banned from the trap club?
>
> Craig: Oh, I think there was definitely an interest on Mr. Sipe's part to have Bob removed.
>
> Cesnik's Attorney: Has Mr. Cesnik ever been banned from your trap club?
>
> Craig: No.

The State then cross-examined Craig:

> State: You mentioned a discussion to possibly ban Mr. Cesnik from the gun club. That was a general discussion among several of the club members, correct?
>
> Craig: I don't know what "several of the club members" means, but there was a discussion amongst a few of them.
>
> State: And this has to do with different behaviors the Defendant has engaged in?
>
> Craig: Yes.
>
> State: Are they offensive behaviors?
>
> Craig: In my opinion, no.
>
> State: In the opinion of some of the other club members?

Cesnik objected to this questioning of Craig by the State:

> Cesnik's Attorney: Objection, he can't testify to the opinions of other club members."
>
> Court: No, you asked him if–whether or not there was definitely an interest in Mr. Sipe–in having the Defendant removed from the trap club, and the State's entitled to inquire as to a basis for that. The door's been opened for that purpose, so the objection is overruled.

The State then proceeded to ask the witness specifically whether Cesnik's truck and clothing contained the phrases "fuck Californians, fuck liberals."

¶8 Cesnik testified at trial, maintaining his innocence regarding the offense charged. When asked by his attorney if he picked up his weapon to threaten Sipe, Cesnik responded, "No, sir," explaining that he picked up his weapon in order "[t]o proceed to the practice trap to shoot a round." At the end of the two-day trial, a jury found Cesnik guilty of assault with a weapon.

¶9 Prior to sentencing, the Department of Corrections, Office of Probation and Parole, prepared a presentence report. When interviewing Cesnik for the report, the probation officer asked Cesnik to provide his thoughts on how the court should proceed with his sentence. Cesnik responded: "I'm not being a smart-ass, my charges should be dropped."

¶10 While Cesnik testified at trial, he chose not to speak at the sentencing hearing. Cesnik's counsel did not invoke Cesnik's right to remain silent; nor did the District Court comment on his silence. After hearing testimony, the court stated the basis for its sentencing decision, in significant part, reflected its concern over Cesnik's tendency toward violent outbursts, and his continued denial and lack of remorse for such incidences.

[T]he Court has concern at page 4 of the presentence report where the Defendant is asked to give his own statement: "In your own words what did you do to get arrested on this charge?" And quoting the Defendant–this isn't my language–he, Cesnik, "I called Brian Sipe a motherfucker." That's not what he was convicted of, and that's not what the evidence indicated he did. He did do that, but that's not why we're here. . . .

And in further–giving rise to further concern as to a lack of acceptance of responsibility, when the officer, through this report, asked Mr. Cesnik, the Defendant, to give his recommendation as to what the Court should do, he says, "I'm not being a smart-ass, my charges should be dropped." This is after he has been convicted of threatening a person with a loaded shotgun.

. . . .

These are concerns that the court has. Refusal to accept responsibility is a big one. . . . [W]ithout remorse and acceptance of responsibility, you cannot have rehabilitation, it doesn't happen.

And the record will reflect the Judge agrees.

There is evidence here of a history of violence. As I have indicated, remorse is important. There is none here. A purpose in sentencing in the State of Montana is–it's many-fold, the Court must try to promote rehabilitation, it must impose a sanction for the behavior that the Defendant has been convicted of engaging in, it must consider protection of society. And what is contemplated here is something that hopefully will accomplish all that without taking away from this Defendant what he threatened to take away from Brian Sipe. . . . [T]here needs to be structure here so that acceptance of responsibility occurs.

And it is for that reason that the Court is inclined to follow more the recommendation made by the State than by the Defendant, or, in the middle, that made by the presentence investigation . . . . And I think under the totality of the circumstances, and having listened to all of the evidence, and clearly recalling the circumstances as they were portrayed and found to have occurred by a unanimous jury of 12 citizens, the Court is prepared to enter judgment here . . . .

. . . The Court observed then, and it's affirmed by this presentence report, there was no remorse or even then acceptance of responsibility on the Defendant's part.

6

¶11 The District Court sentenced Cesnik to a term of ten years at the Montana State Prison, with six years of incarceration suspended. Cesnik appealed the decision to this Court, arguing that the District Court improperly admitted evidence regarding the material on Cesnik's truck and clothing, and improperly penalized Cesnik during sentencing for maintaining his innocence.

## STANDARD OF REVIEW

¶12 "This Court's standard review of rulings on the admissibility of evidence, including oral testimony, is whether the district court abused its discretion." *State v. Snell*, 2004 MT 334, ¶ 17, 324 Mont. 173, ¶ 17, 103 P.3d 503, ¶ 17. *See also State v. Castle*, 1999 MT 141, ¶ 11, 295 Mont. 1, ¶ 11, 982 P.2d 1035, ¶ 11. "The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse of discretion." *Snell*, ¶ 17. *See also State v. Monaco* (1996), 277 Mont. 221, 225, 921 P.2d 863, 866; *State v. Stringer* (1995), 271 Mont. 367, 374, 897 P.2d 1063, 1067; and *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380. "A district court's ruling on a motion *in limine* is an evidentiary ruling and the court has broad discretion in determining whether evidence is relevant and admissible, and as such, we will not overturn a district court's determination absent an abuse of that discretion." *Snell*, ¶ 17.

¶13 "This Court reviews a criminal sentence for legality only." *State v. Shreves*, 2002 MT 333, ¶ 8, 313 Mont. 252, ¶ 8, 60 P.3d 991, ¶ 8. *See also State v. Burkhart*, 2004 MT 372, ¶ 58, 325 Mont. 27, ¶ 58, 103 P.3d 1037, ¶ 58; *State v. J.C.*, 2004 MT 75, ¶ 36, 320 Mont.

7

411, ¶ 36, 87 P.3d 501, ¶ 36; *State v. McLeod*, 2002 MT 348, ¶ 12, 313 Mont. 358, ¶ 12, 61 P.3d 126, ¶ 12.

## DISCUSSION

### ISSUE 1

*Whether the District Court correctly admitted evidence of phrases on Cesnik's truck and clothing.*

¶14 During trial, Cesnik asked Rick L. Craig, vice-president of the club, and a witness for the defense, "whether Mr. Sipe has been interested in getting Mr. Cesnik banned from the trap club." Craig responded, "Oh, I think there was definitely an interest on Mr. Sipe's part to have Bob removed." During cross-examination, the State followed up on this line of questioning by asking Craig whether several club members discussed banning Cesnik due to perceived "offensive behaviors." Cesnik objected to the State's questions, arguing that the witness "can't testify to opinions of other club members." The Court overruled Cesnik's objection, noting that Cesnik opened the door to inquiries about why Sipe and some other club members wanted to remove Cesnik from the trap club. Given permission by the court, the State proceeded to ask the witness about the phrases "fuck Californians, fuck liberals" on Cesnik's truck and clothing.

¶15 On appeal, Cesnik asserts that the District Court improperly allowed testimony referencing the phrases because the evidence had no relevance to the question of Cesnik's guilt, caused prejudice, and may have confused the issues. We must address whether the

8

District Court abused its discretion by allowing into evidence the phrases on Cesnik's truck and clothing. Importantly, "[t]rial courts have broad discretion to determine whether evidence is relevant and admissible, and, absent a showing of abuse of discretion, these determinations will not be overturned." *State v. Strauss*, 2003 MT 195, ¶ 18, 317 Mont. 1, ¶ 18, 74 P.3d 1052, ¶ 18 (citing *State v. Osborne*, 1999 MT 149, ¶ 23, 295 Mont. 54, ¶ 23, 982 P.2d 1045, ¶ 23).

¶16 Rule 401, M.R.Evid., defines "relevant evidence" as "evidence having any tendency to make the existence of *any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence*. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant." (Emphasis added.) Since Cesnik opened the door to the question of whether Sipe wanted Cesnik banned from the club, testimonial evidence of certain phrases on Cesnik's truck and clothing were relevant to the jury's understanding of the strained relationship between the two men. The evidence that Sipe wanted Cesnik removed from the club was relevant to explaining additional motivation for Cesnik assaulting Sipe, and also, why Sipe would have had reason to experience fear and/or apprehension of Cesnik. The explanation of the ongoing conflict between Cesnik and Sipe necessarily referenced the language on Cesnik's truck and clothing. Cesnik argues that the evidence should have been excluded as prejudicial because it "served no purpose other than to inflame the passions of the jury and to confuse the issues." All relevant evidence is admissible, even that which is prejudicial. Relevant evidence is only excluded if its probative value is substantially outweighed by the danger of

9

*unfair* prejudice. Rule 403, M.R.Evid. Here, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

¶17    We conclude that the District Court did not err in admitting the evidence. It provided further context to the animosity between Cesnik and Sipe and explained why Sipe wanted Cesnik removed from the club–an issue which Cesnik's counsel broached on direct examination of Craig. The District Court did not abuse its discretion by admitting the disputed evidence.

## ISSUE 2

*Whether the District Court imposed a legal sentence when it based Cesnick's punishment, in large part, on his refusal to accept responsibility and show remorse.*

¶18    On appeal Cesnik, noting his assertion of innocence and that he did not testify on his own behalf at the sentencing hearing, argues that the court improperly imposed a harsher sentence by interpreting his silence as a refusal to accept responsibility and show remorse. In support of his argument, Cesnik relies upon our decision in *State v. Shreves*, 2002 MT 333, 313 Mont. 252, 60 P.3d 991, in which we stated the following narrow rule: "a sentencing court may not draw a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense for which he stands convicted–i.e., that he is actually innocent." *Shreves*, ¶ 22. We noted that our decision stood "grounded in state and federal constitutional protections against self incrimination." *Shreves*, ¶ 22. *Shreves*, in other words, turned on

10

the proposition that a court cannot impose a harsher sentence due to the defendant having invoked his constitutional right to remain silent.

¶19 Unlike the defendant in *Shreves,* Cesnik did not invoke his right to remain silent at the sentencing hearing. "A person claiming the protection of the Fifth Amendment generally must affirmatively invoke it." *State v. Fuller* (1996), 276 Mont. 155, 160, 915 P.2d 809, 812 (citation omitted). If a defendant "fails to assert the privilege, it will be deemed waived." *Fuller*, 276 Mont. at 160, 915 Mont. at 812 (citations omitted). Not only did Cesnik fail to expressly invoke his constitutional right to remain silent during sentencing, the court did not mention, nor allude to Cesnik's silence as a factor in determining punishment.

¶20 The court's harsher sentence was not based on what Cesnik *did not* say, but rather, on what he *did* say–that is, Cesnik insisted that he was innocent. At the outset of the sentencing hearing, the court observed that Cesnik refused to accept responsibility and show remorse, evidenced by his response during the presentence report interview when he told the probation officer that his "charges should be dropped." Dismayed by Cesnik's comment, the court spent the remainder of the hearing commenting on the need to impose a sentence that would instill acceptance of responsibility in Cesnik. To this end, the court imposed a sentence of ten years with six years suspended.

¶21 In *Shreves*, we held that, while "lack of remorse can be considered as a factor in sentencing, we cannot uphold a sentence that is based on a refusal to admit guilt." *Shreves*, ¶ 20. Since Shreves expressly invoked his right to remain silent, we concluded that the sentencing court could not, based on that silence, infer lack of remorse and failure to accept

11

responsibility. Here, although Cesnik did not expressly invoke his right to remain silent, he did maintain his innocence.

¶22 We discussed the above *Shreves* reasoning in *State v. Burkhart*, 2004 MT 372, ¶ 59, 325 Mont. 27, ¶ 59,103 P.3d 1037, ¶ 59. In *Burkhart* we determined that the record failed to "reflect that the court considered Burkhart's silence at the sentencing hearing as lack of remorse" or that "Burkhart's sentence was in large part based upon the fact that he refused to take responsibility and admit his crime." *Burkhart*, ¶ 60 (citing *Shreves*, ¶ 13). We affirmed the court's careful consideration of many relevant factors in sentencing Burkhart. *Burkhart*, ¶ 60.

¶23 In *State v. Imlay* (1991), 249 Mont. 82, 91, 813 P.2d 979, 985, we held that a defendant has a constitutional right against self-incrimination, "which prohibit[s] augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination." In that case, after a jury convicted the defendant of sexual assault, the court sentenced him to prison with certain conditions, including the condition that he complete a sexual therapy program. *Imlay*, 249 Mont. at 84, 813 P.2d at 981. In order to participate in the treatment program, an inmate had to admit committing the crime–an action Imlay refused to take. The District Court consequently revoked the defendant's suspended sentence. On appeal, we observed that "the defendant is being subjected to a penalty that he would not otherwise be subjected to if he would simply admit his guilt." *Imlay*, 249 Mont. at 90, 813 P.2d at 985. We held this to be a violation of the defendant's right against self-incrimination.

> While the sentencing judge may take into account his belief that the defendant was not candid with the court, this is to be distinguished from the rule that a sentence may not be augmented because a defendant refuses to confess or invokes his privilege against self-incrimination.

*Imlay*, 249 Mont. at 88-89, 813 P.2d at 984 (citations omitted). We then explained that because "our system still provides . . . for opportunities to challenge [the] conviction," compelling a defendant "to admit guilt as a condition to his continued freedom" would render meaningless our criminal justice system. *Imlay*, 249 Mont. at 90-91, 813 P.2d at 985.

¶24 Here, in imposing sentence, the court noted that Cesnik, even ". . . after he has been convicted of threatening a person with a loaded shotgun," told the probation officer, "I'm not being a smart-ass, my charges should be dropped." Contrary to the situation in *Burkhart*, it is apparent that the court was dismayed at Cesnik's refusal to acknowledge the jury's verdict and that the court placed considerable weight on the fact that Cesnik, despite having been convicted of the offense, had not accepted responsibility for his acts. That is, he would not admit to having committed the crime. Given that Cesnik had consistently maintained his innocence and had a right to appeal his conviction, such an admission would have undermined his constitutionally protected right not to incriminate himself and rendered his appeal meaningless.

¶25 We hold that a sentencing court may not punish a defendant for failing to accept responsibility for the crime when that defendant has expressly maintained his innocence and has a right to appeal his conviction.

13

¶26    We affirm the conviction and reverse the imposition of sentence and remand for a new

sentencing.


/S/ W. WILLIAM LEAPHART


We concur:


/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON