FILED

January 8 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0528

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 5N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

WESLEY JARED GARDINER,

Defendant and Appellant.

FILED

JAN 0 8 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-05-443
Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Martin W. Judnich, Peter F. Lacny; Law Office of Martin W.
Judnich, Missoula, Montana

For Appellee:

Hon. Mike McGrath, Attorney General; Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

Fred R. Van Valkenburg, Missoula County Attorney; Suzy
Boylen-Moore, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  June 26, 2007

Decided:  January 8, 2008

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A jury in the Fourth Judicial District Court, Missoula County, found Wesley Jared Gardiner not guilty of felony burglary and guilty of felony partner assault. The District Court entered judgment, and Gardiner appeals. We affirm.

¶3 The issue on appeal is whether the District Court abused its discretion in denying Gardiner's motion for a mistrial.

## BACKGROUND

¶4 The State of Montana charged Gardiner with felony burglary and felony partner assault. Before trial, the State moved to prohibit testimony by any witness regarding any prior incidents between Gardiner and the victim. The District Court granted that motion.

¶5 At the jury trial, the victim testified that after her romantic relationship with Gardiner had ended, she awoke one morning to find him sleeping on her living room couch. She further testified that, when she told Gardiner to leave, he hit her in the forehead and in the shoulder blade, and then put her in a headlock and took her to the floor. When her children

came to her aid and called 911, Gardiner left the home.

¶6     During cross-examination of Missoula police officer Kenneth Guy, who responded to the 911 call, the following exchange occurred:

> Q.  [by Gardiner's counsel]. . . Did you ever ask [the victim] if Wes [Gardiner] sometimes stayed there?
>
> A.  I did not. She just stated that he was not wanted there and was not to be there.
>
> Q. . Did you follow up with that to try and get more specificity of whether he had been allowed at some point and then that was revoked or whether it was just a blanket, can't come here, did you follow up on that at all?
>
> A.  I checked on the computer screen and looked at what she had told me about some prior instances that I looked up.
>
> Q.  Okay. So you didn't actually ask her?
>
> A.  She told me about him assaulting her in the past and I looked up those report numbers.

Gardiner's counsel then moved for a mistrial outside the presence of the jury. The District Court denied the motion on the basis the question "did you follow up?" had opened the door to evidence of other crimes. The court advised the State, however, to stay away from the subject because the door was "not wide open yet." The State neither inquired into other incidents nor mentioned the subject in closing argument. The defense did not request a curative instruction, and none was given.

¶7     The jury found Gardiner not guilty of burglary but guilty of partner assault. The

3

District Court entered judgment, and Gardiner appeals.

## STANDARD OF REVIEW

¶8 We review a district court's grant or denial of a motion for mistrial to determine whether the district court abused its discretion. *State v. Smith*, 2005 MT 18, ¶ 6, 325 Mont. 374, ¶ 6, 106 P.3d 553, ¶ 6 (citation omitted). The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *State v. Weldele*, 2003 MT 117, ¶ 72, 315 Mont. 452, ¶ 72, 69 P.3d 1162, ¶ 72 (citation omitted).

## DISCUSSION

¶9 **Did the District Court abuse its discretion in denying Gardiner's motion for a mistrial?**

¶10 A mistrial generally is appropriate when a reasonable possibility exists that inadmissible evidence might have contributed to the conviction. *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1005 (1997) (citations omitted). However, we will not put a district court in error for an action in which the appellant acquiesced or actively participated. *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32 (citation omitted). A party waives the right to appeal an alleged error by acquiescing in, actively participating in or not objecting to the error. *Smith*, ¶ 10.

¶11 Gardiner's first contention on appeal is that Officer Guy's reference to prior assaults was inadmissible. It is undisputed that M. R. Evid. 404(b) generally prohibits evidence of

4

other crimes, wrongs or acts. Indeed, the District Court so ruled in response to the State's pretrial motion. Thus, Guy's reference to prior assaults was inadmissible pursuant to both M. R. Evid. 404(b) and the court's pretrial ruling.

¶12 Gardiner next contends the District Court abused its discretion in determining he had opened the door to the testimony. He advances no authority—from this or any other jurisdiction—in support of his position. Nor did he attempt to distinguish any of our "opened the door" jurisprudence in his opening brief. *See e.g. Smith*, ¶ 15; *Harris*, ¶ 31; *see also State v. Cesnik*, 2005 MT 257, ¶¶ 14-17, 329 Mont. 63, ¶¶ 14-17, 122 P.3d 456, ¶¶ 14-17; *State v. Weitzel*, 2000 MT 86, ¶ 29, 299 Mont. 192, ¶ 29, 998 P.2d 1154, ¶ 29. M. R. App. P. 12(1)(f) requires an appellant's opening brief to cite to authorities which support the arguments presented on appeal.

¶13 The appellant bears the burden of establishing error by the trial court. *See e.g. In re D.F.*, 2007 MT 147, ¶ 22, 337 Mont. 461, ¶ 22, 161 P.3d 825, ¶ 22; *State v. Buck*, 2006 MT 81, ¶ 30, 331 Mont. 517, ¶ 30, 134 P.3d 53, ¶ 30; *Rolison v. Bozeman Deaconess Health Services, Inc.*, 2005 MT 95, ¶ 20, 326 Mont. 491, ¶ 20, 111 P.3d 202, ¶ 20. Gardiner has failed to establish that the District Court's determination that he "opened the door" constituted an abuse of discretion. For that reason, we do not reach Gardiner's other contentions on appeal.

¶14 With due respect to the dissenting and special concurring Justices, we are not requiring or even suggesting a new, more stringent briefing requirement. We realize it is

often true that no Montana authority directly on point exists, particularly as to fact-driven issues such as the "opened the door" issue argued by Gardiner here and other strongly fact-driven discretionary calls such as best interests of a child in dissolution cases. What we expect of counsel in regard to such issues is that they analogize to or distinguish away from existing cases; alternatively, parties present potentially persuasive authority from other jurisdictions. In his opening brief, Gardiner's counsel did nothing at all regarding cases relating to "opening the door."

¶15 We conclude Gardiner has failed to establish that the District Court abused its discretion in denying Gardiner's motion for a mistrial.

¶16 Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

6

Justice Patricia O. Cotter concurs.

¶17 I concur with the Court's decision to affirm the District Court's denial of Gardiner's motion for a mistrial. I do so because I would conclude that defense counsel arguably "opened the door" by pressing the investigating officer—with an open and incomprehensible question—about whether and why the defendant had once been welcome in the victim's home but was no longer welcome. I write separately to state that I disagree with the Court's rationale for affirming, and agree with the Dissent's point that Gardiner should not be faulted for failing to advance or distinguish legal authority for his "opened the door" argument. The inquiry in such cases being wholly fact-driven, a defendant should not be penalized with disregard of the merits of this issue for his failure to provide the type of legal authority the Court requires here.

_____
Justice

Justice Jim Rice joins in the Concurrence of Justice Patricia O. Cotter.

_____
Justice

7

Justice James C. Nelson dissents.

¶18    I dissent from the Court's decision.

¶19    After conceding that Officer Kenneth Guy's responses to defense counsel's questions included inadmissible other-crimes evidence in violation of M. R. Evid 404(b), the Court disposes of Gardiner's appeal by ruling that he did not advance authority supporting his position that the District Court abused its discretion in concluding that his questions "opened the door" to Officer Guy's answers, and that he did not distinguish any of our "opened the door" cases. For this latter position, the Court "see" cites *State v. Smith*, 2005 MT 18, ¶ 15, 325 Mont. 374, ¶ 15, 106 P.3d 553, ¶ 15, and *State v. Harris*, 1999 MT 115, ¶ 31, 294 Mont. 397, ¶ 31, 983 P.2d 881, ¶ 31; and "see also" cites *State v. Cesnik*, 2005 MT 257, ¶¶ 14-17, 329 Mont. 63, ¶¶ 14-17, 122 P.3d 456, ¶¶ 14-17, and *State v. Weitzel*, 2000 MT 86, ¶ 29, 299 Mont. 192, ¶ 29, 998 P.2d 1154, ¶ 29.[1]

¶20    While this approach may be a facile way to avoid actually addressing and resolving Gardiner's argument, I cannot agree with our disposing of this meritorious appeal on that basis. Rather, the Court's reliance on "implicit" authority, dicta, and distinguishable case law, begs the question of what sort of direct[2] authority we expect Gardiner to advance to demonstrate that he did not "open the door" to Officer Guy's inadmissible testimony.

---

[1] "See" cites are used in our opinions "when the cited authority (a) supports the stated proposition implicitly or (b) contains dicta that support the proposition." *ALWD Citation Manual* 44.3 (3d ed. 2006) (hereafter *ALWD*). "See also" cites are used as support for the proposition, but signal that the case is not as strong or direct as when no signal or "see" is used. "See also" may be used "when the cited authority supports the point made, but is in some respect distinguishable from previously cited cases." *ALWD* 44.3.

[2] "Direct" authority is that which directly supports the stated proposition. *ALWD* 44.2(a).

8

¶21 Either the questions defense counsel asked opened the door or they did not. This is not a question upon which counsel can be expected to cite direct authority one way or the other. If this Court expects Gardiner to somehow locate a case that ruled that his precise questions opened the door to the answers that Officer Guy gave, then we impose upon him an impossible burden. I could find no such authority, and I challenge—in vain, apparently—the Court to locate such a case. Moreover, if the Court expects Gardiner to distinguish from other "opened the door cases" his approach in seeking a mistrial and in not requesting a curative instruction, then, as I will discuss *infra*, we impose upon him a pointless burden.

¶22 Our task in this appeal is to determine whether the trial judge erred in ruling that Gardiner's questions opened the door to inadmissible testimony. This determination, in my view, involves a question of law or mixed question of law and fact, which we review, in either case, *de* novo.[3] We can certainly make that decision without citing or

---

[3] The question of whether a party has "opened the door" to certain testimony is not a matter of discretion. Discretionary trial court rulings are ones which "encompass[] the power of choice among several courses of action, each of which is considered permissible," such as trial administration issues, evidentiary rulings, and the scope of cross-examination. *Steer, Inc. v. Department of Revenue*, 245 Mont. 470, 475, 803 P.2d 601, 603-04 (1990). The determination that Gardiner did or did not "open the door" is *not* a matter of choice. It is a matter of law or a mixed question of law and fact. *See e.g., People v. Fabricio*, 820 N.E.2d 863, 865 (N.Y. 2004) ("Here, the sidebar conference focused on a pure question of law—whether defendant's testimony 'opened the door' to the use of his prior inconsistent statement and whether the People had a good faith basis to inquire about it."). In turn, the decision to allow the otherwise barred testimony to be given is a matter of discretion. Once the trial court determines that the door has been opened, it has discretion to let the testimony in or keep it out. I note that in *Cesnik*, we concluded that "[s]ince Cesnik opened the door to the question of whether Sipe wanted Cesnik banned from the club, testimonial evidence of certain phrases on Cesnik's truck and clothing were relevant to the jury's understanding of the strained relationship between the two men."

distinguishing other "opened the door" cases—either the District Court erred or it did not; either defense counsel's questions opened the door to inadmissible testimony or they did not.

¶23 I conclude that the questions at issue here required nothing more than "yes" or "no" answers. The questions were not open-ended and they did not require the sort of narrative answer which Officer Guy gave. Indeed, Officer Guy's answers were not even responsive to the questions asked. Based on the questions asked, the answers given, and the fact that the witness was an experienced police officer who had been instructed by the prosecutor not to mention the very other crimes evidence with which he gratuitously supplemented his answer, I conclude that defense counsel's questions did not open the door to Officer Guy's inadmissible testimony.

¶24 On the matter of defense counsel's questions, the State goes to some length in criticizing defense counsel's questions and questioning technique, and contends that he should have asked leading questions on cross-examination and should have given Officer Guy "verbal cues" as to how he was supposed to answer. I know of no statute or rule that requires a particular form of question or questioning technique, the violation of which compels the conclusion that the questioner "opens the door" to inadmissible testimony— either the question at issue required the witness to answer in an inappropriate manner or not. The words of the question actually used govern.

---

*Cesnik,* ¶ 16. We stated that Cesnik opened the door—whether as a factual proposition, a legal conclusion or a mixture of the two is not clear—but certainly not as a matter of discretion.

10

¶25 Moreover, it is preposterous to suggest that Officer Guy—a trained and experienced police officer who had been instructed by the prosecutor not to testify to other-crimes evidence—needed "verbal cues" from defense counsel in order to avoid disclosing impermissible testimony. In this regard, the record reflects that out of the presence of the jury and before Officer Guy was called to the stand, the matter of the other-crimes evidence was raised by the prosecutor and was discussed at length by the court, the prosecutor and defense counsel. (The discussion covers nearly four pages of transcript.) It was the prosecutor's position that if defense counsel inquired of Officer Guy "why" Gardiner was not interviewed by law enforcement, that would "open the door to numerous other acts." Defense counsel agreed that if he asked a "why" question that would open the door to other-acts evidence. It was defense counsel's position, however, that if he did not ask a "why" question, but simply asked Officer Guy "point blank" if Gardiner was interviewed—i.e., whether as a matter of fact there was or was not an interview—that would not open the door to testimony regarding the reasons for there being no interview. The court recognized the issue as a close call, but, nevertheless, cautioned the prosecutor against "driv[ing] through a door" that defense counsel would not have opened. The prosecutor stated she understood that. The trial judge then went further and specifically admonished the prosecutor: "And your witnesses need to be cautioned about *volunteering supplemental answers*" (emphasis added). In response, the prosecutor assured the court: "They have been instructed that there's to be no mention of prior assaults, the fact that he's on probation, that this is a felony or partner assault, none of that." Accordingly, on this record it is disingenuous for the State to argue that Officer

11

Guy needed "verbal cues" to avoid supplementing his answers to what were "yes" or "no" questions, with inadmissible testimony.

¶26   The State then goes on to argue that Officer Guy's response was "within the bounds of a normal response by a layman unversed in the intricacies of language and correct legal procedure." Officer Guy was not a "layman unversed in the intricacies of language and correct legal procedure." He was a trained police officer with 16 years experience and he had been specifically instructed not to disclose the other crimes evidence. That fact aside, it was Officer Guy's obligation as a police officer and as an officer of the court[4] to respect Gardiner's right to a fair trial and to avoid disclosing the inadmissible evidence. Because police officers hold positions of "great public trust," *Bozeman Daily Chronicle v. Police Dept.*, 260 Mont. 218, 227, 859 P.2d 435, 440-41 (1993), we impose upon them stricter standards of conduct in the performance of their official duties than we do on "laym[e]n unversed in the intricacies of language and correct legal procedure." For example, we have stated:

> A police officer's legal obligation, however, extends far beyond that of his or her fellow citizens: the officer not only is required to respect the rights of other citizens, but is sworn to *protect and defend* those rights. In order to discharge that considerable responsibility, he or she is vested with extraordinary authority. Consequently, when a law enforcement officer, acting with the apparent imprimatur of the state, not only fails to protect a citizen's rights but affirmatively *violates* those rights, it is manifest that such an abuse of authority, with its concomitant breach of trust, is likely to have a different, and even more harmful, emotional and psychological effect on the aggrieved citizen than that resulting from the tortious conduct of a private citizen.

---

[4] Typically, a police officer is considered an "officer of the court." *Black's Law Dictionary* 1114 (7th ed. 1999).

*Dorwart v. Caraway,* 2002 MT 240, ¶ 43, 312 Mont. 1, ¶ 43, 58 P.3d 128, ¶ 43 (quoting *Binette v. Sabo,* 710 A.2d 688, 698 (Conn. 1998)).

¶27 Therefore, I cannot agree that Gardiner can be faulted when his counsel asked specific questions that called for "yes" or "no" answers, only to receive completely unresponsive and improper answers from Officer Guy to the questions asked.

¶28 Finally, the State—and apparently this Court—faults Gardiner for not moving to strike the offending testimony or request a cautionary instruction. The State cites *State v. Conrad,* 241 Mont. 1, 785 P.2d 185 (1990); *State v. Long,* 2005 MT 130, 327 Mont. 238, 113 P.3d 290; and *State v. Henderson,* 2005 MT 333, 330 Mont. 34, 125 P.3d 1132. In *Conrad,* the inadmissible other-crimes evidence was struck and the jury admonished to disregard it. The opinion is silent on whether there was a motion to strike or for a curative instruction. *Conrad,* 241 Mont. at 9, 785 P.2d at 190. Similarly, in *Long,* in response to an unintentional mention of other crimes evidence (*Long,* ¶¶ 19, 26) to which defense counsel objected (*Long,* ¶¶ 17, 26), the trial court gave a curative instruction (*Long,* ¶ 26). Again, the opinion is silent as to whether defense counsel moved to strike or for a cautionary instruction. Defense counsel did move for a mistrial outside the presence of the jury (*Long* ¶¶ 17, 18) which was denied (*Long,* ¶ 26). In *Henderson,* defense counsel did not object to the offending testimony. *Henderson,* ¶ 12. We stated in *Henderson* that if counsel believed that the testimony at issue was inadmissible he should have moved to strike or for a limiting instruction. *Henderson,* ¶ 13. For that proposition, we cited M. R. Evid. 103, and *Long,* ¶ 25. Rule 103 provides that error may

13

not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection *or* motion to strike appears of record. Rule 103 imposes no requirement that counsel move to strike after making an objection. Either an objection or a motion to strike suffices. Our citation to *Long,* ¶ 25, does not establish a different rule. As discussed *infra,* these authorities are simply a red herring. Defense counsel *did* preserve his objection, and a motion to strike or for a curative instruction would have been pointless.

¶29 In a similar vein, but without analysis, the Court "see" cites *Smith.* There we criticized defense counsel's failure to ask for a curative instruction and for thus compounding the district court's error in admitting improper testimony. *Smith,* ¶ 15. In *Harris,* we concluded that the accused waived his claim that the testimony was admitted in error by failing to object. *Harris,* ¶ 31. The Court "see also" cites *Cesnik.* In that case—and unlike the instant case—we actually addressed the merits of Cesnik's claim that the court improperly admitted irrelevant and inflammatory testimony in cross-examination because defense counsel "broached" the subject on direct examination. We concluded that the court properly allowed the testimony as relevant evidence. *Cesnik,* ¶¶ 14-17. Finally, the Court "see also" cites *Weitzel.* There again, we addressed the merits of the "opened the door" testimony, concluding that Weitzel's testimony on direct examination clearly opened the door to the State for follow-up testimony on Weitzel's history of gun ownership. *Weitzel,* ¶ 29.

¶30 As already noted, none of the State's or the Court's authorities directly compel the conclusion that Gardiner opened the door to Officer Guy's inadmissible testimony. That

14

is the elemental issue which we refuse to resolve. It is a legal or factual/legal question that must be resolved in the affirmative or negative based on the language of the question asked.

¶31 To the extent that the State's and the Court's authorities stand for the proposition that defense counsel should have objected to the inadmissible testimony, the record reflects that counsel fulfilled that obligation by moving for a mistrial. Immediately following Officer Guy's improper testimony, defense counsel called for a sidebar and, outside the presence of the jury, moved for a mistrial based on Officer Guy's non-responsive answers. Following argument on that motion, the trial court denied the motion concluding that defense counsel had opened the door for Officer Guy's testimony. The jury was then called back and the trial proceeded. Defense counsel did all that he was required to do. In response to Officer Guy's improper testimony, counsel moved for a mistrial outside the presence of the jury—precisely what counsel did in *Long. Long,* ¶¶ 17, 18. Thus, under *Long,* Gardiner's objection was preserved as a matter of record in the trial court. Defense counsel raised the objection by way of a motion for mistrial and the trial court denied it.

¶32 If the State's and the Court's authorities are cited for the proposition that defense counsel should have asked for a curative instruction, that is not a requirement here. Having denied Gardiner's motion for a mistrial, and having concluded that Officer Guy's testimony was admissible, the court could hardly have been expected to then instruct the jury to disregard the testimony or to view it with caution. On these facts, a request for a

curative instruction by defense counsel would have been pointless, if not outright contemptuous of the trial judge's evidentiary ruling.

¶33    For the above reasons, there was no obligation for defense counsel on appeal to cite or distinguish "opened the door" cases as the Court contends. Gardiner's objection to the offending testimony was preserved as a matter of record in the trial court in accordance with our jurisprudence, and defense counsel properly raised and argued on appeal the merits of the elemental questions we refuse to address: Whether the trial court erred in concluding that defense counsel's questions "opened the door" to Officer Guy's inadmissible answers, and whether the court abused its discretion in denying Gardiner's motion for mistrial.

¶34    In determining that counsel failed to cite and distinguish other "opened the door" cases, the Court imposes on counsel an impossible burden on the one hand—there are no cases interpreting the questions asked and the answers given here—and a pointless burden on the other—Defense Counsel properly preserved his objection to Officer Guy's testimony in the trial court and raised and argued his objection on appeal. Other "opened the door" cases are irrelevant on the merits of this issue. Either defense counsel's questions opened the door or they did not. Either the trial court erred in ruling Officer Guy's testimony admissible, or it did not. The issue here is straight forward and properly before us. We err in refusing to address the merits of this appeal.

¶35    Finally, where there is a reasonable possibility that inadmissible evidence might have contributed to the conviction, a mistrial is appropriate. *State v. Partin*, 287 Mont. 12, 18, 951 P.2d 1002, 1005 (1997) (citing *State v. Walker*, 280 Mont. 346, 353, 930 P.2d

16

60, 64 (1996)). I conclude that, here, there was a reasonable possibility that Officer Guy's improper testimony contributed to Gardiner's conviction and that, as a result, Gardiner was denied a fair trial.

¶36   I would hold that the District Court erred in determining that defense counsel opened the door to Officer Guy's concededly improper responses. And, for that reason, I would also hold that the District Court abused its discretion in failing to grant Gardiner's motion for a mistrial.

¶37   I dissent.

_____
                                    Justice

*Justice* W. William Leaphart joins in the Dissent of Justice James C. Nelson.

_____
                                    Justice

17